**Petition of Roberto Rodriguez VARGA for Writ of Habeas Corpus, Petitioner,**

**v.**

**George K. ROSENBERG, District Director of Immigration and Naturalization Service at Los Angeles, Respondent.**

**Civ. No. 64–796.**

United States District Court
S. D. California,
Central Division.

Sept. 23, 1964.

---

David C. Marcus, Los Angeles, Cal., for petitioner.

Manuel L. Real, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief Civil Section, James R. Dooley, Asst. U. S. Atty., by James R. Dooley, Los Angeles, Cal., for respondent.

STEPHENS, District Judge.

Petitioner made application for a writ of habeas corpus and the Court issued an order directing the respondent to show cause why the petition should not be granted. The matter came on regularly for hearing on the 21st day of July, 1964, and after hearing the evidence and arguments of counsel, the Court now renders its memorandum of decision.

Petitioner is a Mexican citizen who was admitted to the United States on March 31, 1961, as a permanent resident. On December 9, 1963, he was convicted of a violation of Section 11721 of the California Health and Safety Code, which provides in part:

"No person shall use, or be under the influence of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics."

Petitioner served sixty-five days in the County Jail under sentence of the Superior Court of Los Angeles.

On February 7, 1964, a hearing was held on an order to show cause why petitioner should not be deported pursuant to Subsection (11) of Section 1251(a) of Title 8 U.S.C.A. This section provides that any alien in the United States shall be deported who:

" * * * is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate; * * *."

Petitioner orally waived his right to counsel at the hearing and after the oral order of deportation, waived the right to appeal to the Board of Immigration Appeals. The time for this appeal has long since expired. Petitioner also failed to seek review in the Court of Appeals, pur-

suant to Section 1105a of Title 8 U.S.C.A. The six-month period allowed for such review has also passed.

Petitioner was ordered deported to Mexico, but was released from physical custody on the posting of a $1,000.00 bond, prior to the date this petition was filed.

The Court deems it expedient to take up the jurisdictional issues following a discussion of the merits.

The substantive issue is whether petitioner's conviction under Section 11721 of the California Code renders him deportable pursuant to Section 1251(a) (11), Title 8 U.S.C.A. From the face of the record of the deportation hearing, especially the oral decision of the Special Inquiry Officer, and from the official charge made in those proceedings, it is clear that petitioner was held deportable because of his conviction in the State Court of the crime of unlawful use and being under the influence of narcotics. He was not convicted in the State Court of being addicted or of having been addicted to the use of narcotics, nor was he so charged in the deportation hearing.

The question is whether the Federal Statute referring to "the conviction of a violation of * * * any law or regulation relating to the illicit possession of * * * narcotic drugs," includes the crime of which petitioner was convicted in the California Court. Legislative history is cited as indicative of the congressional intent to include the California offense, to wit, unlawful use of, and being under the influence of, narcotics.

■ While Congress undoubtedly intended to close "every possible loophole where a person had been convicted of a crime relating to the possession of narcotics," the legislative history indicates that the Committee's aim was to eliminate traffic in narcotics as distinguished from use. For example, the Committee concludes its report in the following words:

"Drug addiction is not a disease. It is a symptom of a mental or psychiatric disorder. Because contact with a drug is an essential prerequisite to addiction, elimination of drug servility on the part of addicted persons can best be accomplished by the removal from society of the illicit *trafficker*. It is to this end that your committee has taken favorable action on H.R. 11619." 1956 U.S. Code, Congr. & Adm.News, p. 3274, et seq., 3281. (Emphasis added.)

Congress undoubtedly has aimed its attack upon possession which would give the possessor "such dominion and control of the liquor as would have given him the power of disposal." The quoted words are borrowed from Toney v. United States, 62 App.D.C. 307, 67 F.2d 573, a case involving the crime of possession of liquor.

Petitioner in the case at bar was convicted for use or being under the influence of narcotics. In other words, the narcotics were in his system. At this point the defendant was hardly in a position to traffic in the drug and can hardly be said to have possession which would give him such dominion and control as to include the power of disposition.

Prior to amendment of 8 U.S.C.A. § 1251(a) (11), the statute referred only to possession "for the purpose of the manufacture, production, compounding, transportation, * * * giving away, importation or exportation" of the narcotic. It is consonant with the aforementioned purpose of Congress to include a provision relating to possession alone to obviate the burden of proving possession for a specific purpose. Any disposable narcotic in the possession of anyone is potentially in the narcotic traffic. The object was to accomplish by the best means possible the elimination of the illicit traffic.

■ A distinction between being under the influence of narcotics or having possession is likewise to be found in the laws of California. Section 11500 of the Health and Safety Code of California prohibits possession of narcotic drugs. Penalties for conviction of this crime range from two to ten years for first offenders with no parole for at least two years, to from fifteen years to life im-

prisonment with no parole for fifteen years in the case of the third offense. On the other hand, Section 11721 of the Health and Safety Code of California under which petitioner was convicted sets imprisonment at from ninety days to one year with probation possible after ninety days. In addition, violation of Section 11500 is a felony triable only in Superior Court, while violation of Section 11721 is a misdemeanor triable in Municipal Court. A person under the influence of narcotics is a public hazard in the category of a drunk, and is treated that way, while the trafficker in narcotics is a real menace to society.

The argument that use necessarily includes possession is unsound. The District Court of Appeal of California in People v. Ayala, 167 Cal.App.2d 49, 334 P.2d 61 (1950), commented:

"It is not necessary that one must have narcotics in his possession, in the sense that term is used in section 11500, in order to be under their influence or addicted to their use, since another person could administer the narcotics to the user without his ever having possession thereof prior to their injection into his system." (p. 51 of the Calif.App. Report, p. 63 of 334 P.2d.)

The Court also stated:

"Addiction [and, it is submitted, "use"], a physical state, is distinct from possession both in point of time, manner of accomplishment and the physical relationship between the individual and the contraband." (p. 53 of the Calif.App.Report, p. 64 of 334 P.2d.)

It was held in the above cited case that a prosecution for addiction did not preclude a later prosecution for unlawful possession. See also People v. Rodriguez, 202 Cal.App.2d 191, 20 Cal.Rptr. 556 (1962), to the same effect.

It is an interesting historical note that in Nethercutt v. Commonwealth, 241 Ky. 47, 43 S.W.2d 330 (1931), the Court concluded in a prosecution during prohibition that liquor in one's stomach does not constitute possession.

Petitioner was not convicted of a violation of a law relating to the illicit possession of narcotic drugs within the meaning of the Federal Statute. It follows that the order of deportation is void on its face and the restraint of petitioner is unlawful.

It is the government's contention that this Court has no jurisdiction to give habeas corpus relief for two reasons:

1. The petitioner was not in actual custody at the time his petition was filed.

2. The petitioner failed to exhaust his administrative remedies.

Though petitioner was not in actual physical custody at the time the petition for habeas corpus was filed, his liberty was conditional and subject to restraints. He could be ordered to appear for actual deportation when certain formalities had been completed. This order could come at any time on relatively short notice. There was always a real danger that such notice might be given and the defendant deported before a petition for habeas corpus could be presented to the Court.

The fact that petitioner has actual freedom of movement pending deportation does not deprive this Court of jurisdiction to grant habeas corpus relief. Actual physical restraint is no longer a prerequisite to habeas corpus relief. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) the United States Supreme Court held that a person on parole, though physically free, is under strict control and is constantly threatened with return to custody for minor infractions of the conditions of parole. The Court stated:

"[Conditions of parole] significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ * * *

"* * * It (habeas corpus) is not now, and never has been a static,

narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." (p. 243, 83 S.Ct. p. 377.)

There are other situations in which habeas corpus has been allowed in absence of actual custody. Aliens excluded from entry into the United States have been allowed habeas corpus relief though free to go anywhere else in the world. Brownell v. Tom We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956). State Courts have recognized the use of habeas corpus in contests over the custody of a child.

It would be to place form ahead of substance to deny habeas corpus relief now under facts as appropriate as these because of lack of custody at the date of filing, when it is certain that actual custody and deportation might result at any time if such relief is not granted. It is the holding of this Court that the requirement of custody is satisfied under the facts before it.

■ The government argues that this Court has no jurisdiction to render habeas corpus relief because petitioner failed to take his administrative appeal. This is not in issue. If the order of deportation is unlawful, so is the detention. This involves a question of law and in such cases the utilization of each successive administrative step is not a condition precedent to jurisdiction since a review of neither the procedure nor the findings of fact is involved. Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317 (1903).

The Court notes those cases cited by the government in which the Court of Appeals for the Ninth Circuit dismissed petitions for review because of a failure to utilize the procedure for administrative appeal. Those cases arose under the Federal Statute cited above for review by the Court of Appeals and not under habeas corpus. In addition, it does not appear that the orders of deportation in those cases were questioned as being void on their face.

■ Respondent argued that since the petition for review to the Court of Appeals was available under Section 1105a, Title 8 U.S.C.A., petitioner should be forced to appeal to that Court before seeking the writ of habeas corpus. Petitioner insisted that habeas corpus is an alternative form of review of the administrative process. It is unnecessary to adopt either of these views. Ordinarily habeas corpus is not available when there is another remedy in the regular course. However, one of the recognized exceptions occurs in the case where the judgment under which petitioner is held is wholly void. Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070 (1923).

■ At present, no remedy but habeas corpus exists, the time for petition for review to the Court of Appeals having expired. Resort to writ of habeas corpus is not barred by failure to have utilized remedies which were once available if the petitioner challenges the validity of the order for his detention for reasons which appear on the face of the record as distinguished from review of administrative procedures and findings. This is simply a different facet of the exception referred to in the last paragraph.

It is hereby ordered that:

1. The Petition for Writ of Habeas Corpus be granted;

2. The petitioner be forthwith discharged by respondent District Director of Immigration from any obligation to report pursuant to the order of deportation herein adjudged void; and

3. This order is substituted for an order filed August 28, 1964 and entered August 31, 1964, and is therefore made *nunc pro tunc* as of August 31, 1964.