**Jaime Salvador FLORES–ARELLANO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 92–70129.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1993.

Decided Sept. 15, 1993.

Sonia Saldivar (law student intern argued) and Lillia S. Velasquez, San Diego, CA, for petitioner.

David M. McConnell and Karen Fletcher Torstenson, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: WOOD, Jr.*, REINHARDT, and RYMER, Circuit Judges.

REINHARDT, Circuit Judge:

Jaime Salvador Flores–Arellano challenges the finding that he is deportable on the basis of a misdemeanor state conviction of being under the influence of amphetamine/methamphetamine. Because we conclude that section 241(a)(2)(B)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(2)(B)(i), plainly reaches under-the-influence convictions for controlled substances other than marijuana, we deny Flores' petition for review.

I

Flores, now 29 years old, entered the United States as a permanent resident on April 16, 1990. Although this is the official date of his legal immigrant entry to the United States, Flores lived in this country for many years prior to 1990. All of Flores' parents and siblings are legal permanent residents, and he has two United States citizen children.

On August 13, 1990, Flores pleaded guilty in San Diego Municipal Court to using and being under the influence of amphetamine and methamphetamine on January 8, 1989,[1] in violation of Cal.Health & Safety Code § 11550.[2] On January 20, 1991, the Immigration & Naturalization Service (INS) issued an order to show cause charging Flores with deportability on the basis of his under-the-influence conviction.[3] The Immigration Judge found Flores deportable on August 15, 1991, and he appealed. The Board of Immigration Appeals (BIA) dismissed his appeal

---

* Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. Although the conduct underlying the conviction both occurred and was charged prior to Flores' legal immigrant entry, neither party has suggested that that fact affects Flores' deportability on the basis of his post-entry conviction.

2. On the same date, Flores pleaded guilty to petty theft for stealing beer from a store on June 11, 1989. Although this conviction was submitted as an exhibit at Flores' deportation hearing, the INS does not contend that the theft conviction independently renders Flores deportable.

3. The original order to show cause charged Flores with deportability under former section 241(a)(11) of the INA. That section was renumbered and revised by the Immigration Act of 1990. See Pub.L. No. 101–649, § 602(a), 104 Stat. 4978, 5080 (1990). The INS issued an additional charge on April 30, 1991, alleging deportability under section 241(a)(2)(B)(i). The minimal substantive differences between former section 241(a)(11) and section 241(a)(2)(B) have no effect on our interpretation of the statute as regards the issue in this case.

on February 4, 1992. Flores petitions for review.

## II

INA section 241(a)(2)(B)(i) provides that:

Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1251(a)(2)(B)(i). Flores contends that this provision does not render deportable aliens convicted of use or being under the influence of a controlled substance.

▇▇▇ The plain language of section 241(a)(2)(B)(i) reaches under-the-influence convictions. The ordinary meaning of the phrase "any law ... relating to a controlled substance" encompasses laws proscribing use or being under the influence of a controlled substance. The provision is not ambiguous, nor does its plain language lead to absurd results or internal statutory inconsistencies. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Flores' arguments that we should abandon this plain meaning in interpreting section 241(a)(2)(B)(i) are unpersuasive.

Flores relies on cases from the federal courts and the BIA interpreting a prior version of the statute as not reaching under-the-influence convictions. *See Varga v. Rosenberg*, 237 F.Supp. 282 (S.D.Cal.1964), *cited with approval in Matter of Sum*, 13 I & N.Dec. 569, 570 (B.I.A.1970). The previous version interpreted by these cases limited deportability to aliens convicted of trafficking or possession offenses.[4] In the Anti–Drug Abuse Act of 1986, Congress substituted the broader language now in the statute. *See* Pub.L. No. 99–570, Subtitle M (Narcotics Traffickers Deportation Act), § 1751(b), 100 Stat. 3207, 3207–47 (1986). Flores argues that Congress did not intend the amendment to overrule precedent excluding under-the-influence convictions from the deportability statute. However, the legislative history surrounding the 1986 amendment of the deportability statute is inconclusive, lacking the clear indication of a contrary intention necessary to overcome the plain meaning of the post-amendment statute. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987) (when plain language appears to settle question, only clearly expressed contrary intention in legislative history may overcome "strong presumption" that Congress expresses its intent through language it chooses).

Looking to the structure of the statute, Flores argues that the inclusion of "drug abusers" as an independent deportable class under section 241(a)(2)(B)(ii) demonstrates that Congress did not intend aliens convicted of drug "use" crimes to be deportable under section 241(a)(2)(B)(i). Flores' contention rests on the conclusion that if drug "use" convictions render an alien deportable, then the provision regarding drug "abuse," involving more sustained use of controlled substances, would be superfluous. Flores' argument overlooks the conviction requirement in subsection (i), which renders the grounds for deportability specified in subsections (i) and (ii) logically distinguishable. Subsection (ii) reaches alien drug "abusers" who have not been convicted of a controlled substance offense while subsection (i) reaches all aliens *convicted* of controlled substance violations, including the use of drugs.

Finally, Flores contends that the legislature's specified exclusion of single offenses involving possession of a personal-use quantity of marijuana and its omission of a similar

---

4. The statute previously rendered deportable any alien convicted of violating:

    ... any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or ... any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate.

    8 U.S.C. § 1251(a)(11) (repealed 1986).

exclusion for actual use of marijuana leads to the incongruous result that one conviction of the less serious offense of marijuana use would lead to deportation while one conviction of possession would not.[5] To avoid imputing such irrationality to our lawmakers, Flores argues that Congress did not interpret the section as reaching any under-the-influence offenses and therefore had no reason to specify an exception for marijuana use.

While the argument has some superficial appeal, there is a much more logical interpretation of section 241(a)(2)(B)(i) that avoids the paradoxical result suggested by Flores: the exception for a single conviction involving personal-use marijuana possession includes an implicit exception for a single conviction of *actual* personal use of marijuana. Such an interpretation of the statute makes absolute logical sense, but does not affect aliens, like Flores, who are convicted of being under the influence of controlled substances other than marijuana. The inclusion of a limited exception for a single conviction of marijuana possession does not contradict the plain meaning of section 241(a)(2)(B)(i) as encompassing under-the-influence convictions.

### III

Because we conclude that INA section 241(a)(2)(B)(i) renders deportable aliens convicted of use or being under the influence of controlled substances other than marijuana, we deny Flores' petition for review.[6]

DENIED.

REINHARDT, Circuit Judge, specially concurring:

Even as combatting crime has become a major federal legislative initiative of yet another presidential administration, we have become increasingly aware of the unintended casualties of our decade-long "War on Drugs." Of late, several members of the ordinarily reticent judiciary have spoken out about some of these previously-hidden costs: the loss of sentencing discretion and lengthy incarceration of first-time offenders, for example. Judges have also noted that major drug offenders can and do obtain more lenient treatment than fringe participants because only the major players can turn in their subordinates and thus provide the substantial governmental assistance that is a prerequisite to sentencing below the statutory minimum. The far less culpable bit players ordinarily have no knowledge of who their ringleaders are. In the catalog of draconian acts perpetrated in furtherance of federal efforts to eliminate illicit drug trafficking, deporting lawful resident aliens solely because of a single conviction of drug use must certainly rank high. Deportation is a drastic action indeed when applied to people here lawfully, with long-term residency and extensive family ties in this country, often to parents or children. Nonetheless, the legislature's words compel the result we reach in our opinion. I write this special concurrence only to emphasize two points.

The first is that this is one of those rare occasions when our statutory interpretation rests almost entirely upon the legal fiction that Congress' language embodies its intent. *See Connecticut Nat'l Bank v. Germain*, —— U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (plain language rule, like all canons of construction, is a presumptive rule of thumb for use in determining statutory meaning). Under the established approach to statutory interpretation, we rely on plain language in the first instance, but always look to legislative history in order to determine whether there is a clear indication of contrary intent. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). In the usual case, of course, the history provides further support for the plain-language inter-

---

5. Drug use has generally been considered a less serious crime than possession. For example, the pre–1986 version of the controlled-substance deportation provision specified "possession of ... marijuana" as a deportable offense, but did not similarly specify use. *See infra* note 4.

6. Flores also challenges the denial of his application for suspension of deportation. However, because ten years have not elapsed since the conviction rendering Flores deportable under section 241(a)(2)(B)(i), he is statutorily ineligible for suspension of deportation. *See* 8 U.S.C. § 1254(a)(2).

pretation. That is not surprising and explains in part why the presumption in favor of interpretations conforming to ordinary meaning makes sense. However, on some occasions, there is nothing in the congressional discussions to support the plain-language interpretation. This is such a case.

Neither party has identified anything in the legislative history that demonstrates that any legislator, much less a majority of them, thought about whether a lawful resident alien convicted of use or being under the influence should be deportable as one convicted of violating "any law ... relating to a controlled substance." The previous version of the statute had been consistently interpreted not to reach "use" convictions, and there is no indication, aside from its text, that the 1986 amendment was designed to overturn this longstanding interpretive precedent. Indeed, the INS agrees that the preeminent concerns in amending the section were apparently to simplify the statute and to broaden it to reach unspecified "designer drugs," but not to expand the provision to reach under-the-influence convictions. Thus, just as it lacks the clarity necessary to enforce the petitioner's argued departure from the ordinary meaning of the plain language, the legislative history offers no support for the government's position.

Ordinarily, where the legislative history fails to further support the plain-language interpretation of a statute, that interpretation is at least more consistent than the alternative with the apparent purpose of the legislation. Here, I am unsure that deporting lawfully resident aliens convicted of a single use of a controlled substance is consonant with the purpose of the deportation provision—whether that purpose be to discourage drug trafficking or to punish serious law violators. If the provision's purpose is to deter drug trafficking, deporting a few occasional users seems unlikely to so impact the demand for illicit drugs as to discourage traffickers. If the purpose is to punish serious lawbreakers, deporting one-time convicted drug users is at best a most dubious way of going about it.

That raises my second point—that the result dictated by the legislature's plain language is draconian. Federal efforts to decrease demand for illicit drugs have generally been non-punitive, in part out of recognition of the addictive nature of most controlled substances. Ordinarily, we look to *treat* drug users rather than to *punish* them. Although many states, such as California, continue to address drug use through the criminal justice system, the federal government generally has not chosen that approach. Leaving aside, however, the habitual drug user or drug addict, deportation for a single under-the-influence conviction is obviously an egregious form of federal *punishment* for what is normally no more than a misdemeanor offense. In my view, such punishment is self-evidently harsh and excessive, if not vindictive. We are concerned here with lawful resident aliens, many of whom have been in the United States for a number of years and have close family ties to this country.[1] Some of these family ties, including those of parent and child, may be severed irrevocably simply because a person unwisely took drugs on one or even several occasions. I find this punitive approach to illicit drug use, visited upon lawful resident aliens, to be most unsettling and ungenerous. It is hardly consistent with the vision that we Americans have of our nation's policies.

Nonetheless, under the rules of statutory interpretation, in order to disregard the plain meaning of the statute, I would be required to conclude that the result is *absurd. See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In a time when we continue to escalate the ever more sweeping "War on Drugs" and when anti-immigration sentiments are dramatically on the rise, it would, unfortunately,

---

1. As noted in the opinion, Flores, although only legally admitted in 1990, had resided here for many years prior to these proceedings. Moreover, the provision we interpret applies to all lawful resident aliens, no matter how long their residency. On the same day we heard argument in this case, we submitted three cases, raising the same issue, that involve aliens legally resident in the United States twenty years and more. These aliens, unlike Flores, are eligible for waiver under 8 U.S.C. § 1182(c), but waiver lies solely within the discretion of the Board of Immigration Appeals.

hardly be absurd to conclude that the Congress intended to treat lawful resident aliens who succumb to even occasional drug use in so harsh a manner. I can only hope that someday Congress, whether or not it initially intended this result, will recognize how unfair its controlled-substance deportation provision can be, and will amend the statute.[2]

---

**2.** I recognize that aliens lawfully resident for at least seven years are eligible for waiver of deportation under 8 U.S.C. § 1182(c). However, that is of little assistance to individuals like the petitioner. Moreover, the INS and the BIA have always followed a highly restrictive policy in granting discretionary waivers, particularly where the ground for deportation relates to controlled substances.