# MATTER OF ESQUEDA

## In Deportation Proceedings

### A-28964484

### *Decided by Board August 15, 1994*

(1) Section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1988), which provides for the deportability of any alien "convicted of a violation of ... any law or regulation ... relating to a controlled substance," encompasses laws proscribing the use or being under the influence of a controlled substance. *Matter of Hernandez-Ponce*, 19 I&N Dec. 613 (BIA 1988), reaffirmed.

(2) The element of guilty knowledge, or mens rea, is not irrelevant to a conviction pursuant to section 11550 of the California Health and Safety Code for use or being under the influence of a controlled substance.

(3) Since the language of the exclusion and deportation grounds of the Act relating to drug convictions was significantly broadened by the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, immigration consequences may now result from a conviction under a law relating to a controlled substance that contains no element of mens rea. *Lennon v. INS*, 527 F.2d 187 (2d Cir. 1975), distinguished. *Matter of Davis*, 16 I&N Dec. 748 (BIA 1979); *Matter of Wolf*, 16 I&N Dec. 125 (BIA 1977); and *Matter of Lennon*, 15 I&N Dec. 9 (BIA 1974), *vacated*, 527 F.2d 187 (2d Cir. 1975), overruled. *Matter of Poon*, 17 I&N Dec. 350 (BIA 1980), *aff'd*, 707 F.2d 258 (6th Cir. 1983); *Matter of Pritchard*, 16 I&N Dec. 340 (BIA 1977); *Matter of Awadh*, 15 I&N Dec. 775 (BIA 1976); and *Matter of Pasquini*, 15 I&N Dec. 683 (BIA 1976), *aff'd*, 557 F.2d 536 (5th Cir. 1977), modified.

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
David Neumeister, Esquire
1351 Santa Monica Mall, Suite 301
Santa Monica, California 90401

ON BEHALF OF SERVICE:
Jane Thompson
Appellate Counsel

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members. Concurring Opinion: Holmes, Alternate Board Member.

In a decision dated April 7, 1989, the immigration judge found the respondent deportable under section 241(a)(11) of the Immigration

and Nationality Act, 8 U.S.C. § 1251(a)(11) (1988),[1] and ordered him deported from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a 33-year-old native and citizen of Mexico who entered the United States in March 1988. The record reflects that he was convicted on October 25, 1988, in the Ventura County Municipal Court, State of California, of using and being under the influence of a controlled substance, namely opiates, cocaine, methamphetamines, or a combination thereof, in violation of section 11550 of the California Health and Safety Code.

At his deportation hearing, the respondent admitted that he was convicted of the crime of use and being under the influence of a controlled substance, but argued that his conviction did not subject him to deportation. The crux of his contention was that Congress did not intend to include convictions for use and being under the influence of drugs within the meaning of section 241(a)(11) of the Act when it revised that ground of deportability by the passage of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207. The immigration judge rejected the respondent's argument and found him deportable as charged. The respondent has reiterated his contentions on appeal.

We note at the outset that the fact of the respondent's conviction, which supports his deportability in this case, has been established by clear, unequivocal, and convincing evidence. See Woodby v. INS, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1994). Although the factual basis for the respondent's deportability is undisputed, the following legal issues must be addressed: (1) whether Congress intended to include the crimes of use and being under the influence of drugs as deportable offenses under section 241(a)(11) of the Act; (2) assuming that the decision in Lennon v. INS, 527 F.2d 187 (2d Cir. 1975), is controlling precedent, whether the California law under which the respondent was convicted is a strict liability statute that requires no element of mens rea for conviction and therefore falls within the ambit of Lennon; and (3) whether Lennon v. INS is applicable law in light of the subsequent revision of the statute and the language of the decision limiting it to foreign convictions.

---

[1] This section of the Act has been revised and redesignated as section 241(a)(2)(B) of the Act, 8 U.S.C. § 1251(a)(2)(B) (Supp. V 1993), by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5080, but that amendment does not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991. See section 602(d) of the Immigration Act of 1990, 104 Stat. at 5082.

## CONVICTION FOR USE OF DRUGS AS A DEPORTABLE OFFENSE

Prior to the amendments of the Anti–Drug Abuse Act of 1986, section 241(a)(11) of the Act provided for the deportability of an alien who at any time has been

> convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the *illicit possession of* or traffic in *narcotic drugs or marihuana*, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate.

Section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (1982) (emphasis added).

Interpreting that version of the law, we held in *Matter of Sum*, 13 I&N Dec. 569 (BIA 1970), that an alien's conviction for use of a narcotic drug could not be equated with a conviction for unlawful possession of the drug so as to bring the alien within the "illicit possession" provisions of section 241(a)(11) of the Act, or the similar exclusion provisions of section 212(a)(23) of the Act, 8 U.S.C. § 1182(a)(23) (1970). In reaching that conclusion, we followed *Varga v. Rosenberg*, 237 F. Supp. 282 (S.D. Cal. 1964), which rejected the position that use of a drug necessarily includes its possession, and we overruled our prior contrary decisions in *Matter of Fong*, 10 I&N Dec. 616 (BIA 1964), and *Matter of H-U-*, 7 I&N Dec. 533 (BIA 1957), where we had held that the unlawful use of drugs presupposes their illicit possession.

Following the passage of section 1751 of the Anti-Drug Abuse Act of 1986, 100 Stat. at 3247-48, section 241(a)(11) of the Act was amended to provide for the deportability of an alien who at any time has been

> convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

Section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (1988).[2] In light

---

[2] As we noted previously, section 241(a)(11) of the Act was revised and redesignated as section 241(a)(2)(B) of the Act by section 602(a) of the Immigration Act of 1990, 104 Stat. at 5080. The current statute now provides as follows:

CONTROLLED SUBSTANCES.—

> (i) CONVICTION.—Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), other than a single

of the changes to this section of the Act, we again addressed the question raised in *Matter of Sum, supra,* in our decision in *Matter of Hernandez-Ponce,* 19 I&N Dec. 613 (BIA 1988). We noted that the revised language of the statute no longer contained any limitation regarding the kind of conviction within its scope. Concluding that it was now broad enough to include convictions for use and being under the influence of drugs, we determined that *Matter of Sum* had been superseded by the amendment to the Act.

The respondent argues that our interpretation of the revised language of section 241(a)(11) of the Act is too broad. He asserts that the amendment was aimed at the problem of drug trafficking by aliens and did not envision the inclusion of convictions for use of drugs, which had not previously been grounds for deportability. According to the respondent, the intent of Congress was only to include "designer" drugs within the scope of the statute and to simplify it by eliminating the list of prohibited drugs, making reference to the Controlled Substances Act instead. Consonant with this position, the respondent contends that *Varga v. Rosenberg, supra,* which held that use of drugs was not a deportable offense, remains controlling law on this issue. Thus, he argues that *Matter of Hernandez-Ponce, supra,* should be overruled as too harsh an interpretation of the statute. We decline to alter the position taken in that case.

We note first that it is well recognized that Congress has historically exhibited a strong national policy to deport aliens convicted of drug offenses from our country. *See, e.g., Ayala-Chavez v. United States INS,* 944 F.2d 638 (9th Cir. 1991); *Mason v. Brooks,* 862 F.2d 190 (9th Cir. 1988); *Blackwood v. INS,* 803 F.2d 1165 (11th Cir. 1986); *Kolios v. INS,* 532 F.2d 786 (1st Cir.), *cert. denied,* 429 U.S. 884 (1976); *Kelly v. INS,* 349 F.2d 473 (9th Cir.), *cert. denied,* 382 U.S. 932 (1965); *Garcia-Gonzales v. INS,* 344 F.2d 804 (9th Cir.), *cert. denied,* 382 U.S. 840 (1965); *Matter of U-M-,* 20 I&N Dec. 327 (BIA 1991), *aff'd,* 989 F.2d 1085 (9th Cir. 1993); *Matter of Ozkok,* 19 I&N Dec. 546 (BIA 1988); *Matter of Favela,* 16 I&N Dec. 753 (BIA 1979); *Matter of A-F-,* 8 I&N Dec. 429 (BIA, A.G. 1959). In recent years Congress has been active in passing legislation that even more clearly manifests its intention to limit the ability of drug offenders to remain in the United States. *See, e.g.,* Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978; Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181; *see also Matter of K-,* 20 I&N Dec. 418 (BIA 1991); *Matter of U-M-, supra;*

---

offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

Section 241(a)(2)(B)(i) of the Act. Thus, in the current, revised version of statute, Congress retained the phrase, "any law ... relating to a controlled substance." *Id.*

*Matter of Roberts*, 20 I&N Dec. 294 (BIA 1991); *Matter of Meza*, 20 I&N Dec. 257 (BIA 1991); *Matter of Eden*, 20 I&N Dec. 209 (BIA 1990); *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990). It is apparent from this legislation that Congress has intensified its interest in preventing drug offenders from avoiding deportation.[3] Moreover, while passing laws more stringent to alien drug offenders subsequent to our decision in *Matter of Hernandez-Ponce, supra*, Congress showed no disagreement with our position by including an exception for those convicted of use or being under the influence of controlled substances. This was so even though Congress did create an ameliorative provision by making an exception for those convicted of "a single offense involving possession for one's own use of 30 grams or less of marijuana."[4] Section 241(a)(2)(B) of the Act, 8 U.S.C. § 1251(a)(2)(B) (Supp. V 1993).

In a recent case addressing the issue now before us, the United States Court of Appeals for the Ninth Circuit recognized an incongruity in the inclusion of this exception for a single conviction involving possession of a personal-use quantity of marijuana, but the omission of a similar exclusion for actual use of marijuana. *Flores-Arellano v. INS*, 5 F.3d 360 (9th Cir. 1993).[5] Nevertheless, the court determined that the plain language of the phrase "any law ... relating to a controlled substance" is unambiguous and that its ordinary meaning encompasses laws proscribing use or being under the influence of a controlled substance. Examining the legislative history of the Anti-Drug Abuse Act of 1986, the court found that it was inconclusive and lacked the clear indication of a contrary intention necessary to overcome the plain language of the statute. Furthermore, the court rejected the alien's reliance on *Varga v. Rosenberg, supra*, and *Matter of Sum, supra*. In so doing, the court distinguished the previous version of the

---

[3]The legislative history of the Immigration Act of 1990 states that the provisions relating to criminal aliens were designed to assist the Service in the apprehension and deportation of such aliens. *See* H.R. Conf. Rep. No. 955, 101st Cong. 2d Sess. 132, *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797. *See also* Statement by President George Bush upon signing S.358, 26 Weekly Comp. Pres. Doc. 1946 (Dec. 3, 1990), *reprinted in* 1990 U.S.C.C.A.N. 6801-1 (stating that the Immigration Act of 1990 met several objectives of the Bush administration's war on drugs and violent crime).

[4]Previously, this exception was available only by means of a discretionary waiver which required an eligible alien to be the spouse or child of a United States citizen or a lawful permanent resident or to be the parent of such a child. Section 241(f)(2) of the Act, 8 U.S.C. § 1251(f)(2) (1988).

[5]The court created a solution to this perceived paradox by fashioning its own exception for a single conviction of actual personal use of marijuana, finding it implicit in the statute. The court emphasized, however, that its interpretation would have no effect on aliens, such as the respondent, who have been convicted of use or being under the influence of controlled substances other than marijuana.

statute interpreted by those cases, which limited deportability to convictions for drug trafficking and possession, from the current, broader language of the statute. We agree with this reasoning of the Ninth Circuit and reject the respondent's contention that *Matter of Hernandez-Ponce, supra*, should be overruled as contrary to the legislative history of the Anti-Drug Abuse Act of 1986 and *Varga v. Rosenberg*.

## MENS REA REQUIREMENT UNDER CALIFORNIA LAW

Our analysis of the statute does not end here, however, because the respondent has also argued that *Matter of Hernandez-Ponce, supra*, is improper since it implicitly overrules *Lennon v. INS, supra*, as well as *Matter of Wolf*, 16 I&N Dec. 125 (BIA 1977), in which the Board adopted the *Lennon* decision. The aliens in those cases had been convicted of possession of marijuana under a British statute which was found to impose absolute liability. In *Lennon*, the Second Circuit determined that in light of the "deeply rooted requirement of knowledge and intent in our legal system," Congress did not intend to subject an alien "convicted under a foreign law that made guilty knowledge irrelevant" to the harsh immigration consequences of a drug conviction. *Lennon v. INS, supra*, at 193–94. We stated in *Wolf* that we would follow the court's interpretation of the statute in question, agreeing that a person's lack of knowledge that a prohibited substance was in his possession was irrelevant to the offense defined by the British law. The respondent asserts that section 11550 of the California Health and Safety Code, under which he was convicted, similarly requires no proof of guilty knowledge. Thus, he argues that the rationale stated in *Lennon* should apply to him.

We have reviewed our decisions dealing with so-called "strict liability" statutes and conclude that they do not require us to overrule *Matter of Hernandez-Ponce, supra*, as the respondent urges. *See Matter of Poon*, 17 I&N Dec. 350 (BIA 1980), *aff'd*, 707 F.2d 258 (6th Cir. 1983); *Matter of Davis*, 16 I&N Dec. 748 (BIA 1979); *Matter of Pritchard*, 16 I&N Dec. 340 (BIA 1977); *Matter of Wolf, supra; Matter of Awadh*, 15 I&N Dec. 775 (BIA 1976); *Matter of Pasquini*, 15 I&N Dec. 683 (BIA 1976), *aff'd*, 557 F.2d 536 (5th Cir. 1977); *Matter of Lennon*, 15 I&N Dec. 9 (BIA 1974), *vacated*, 527 F.2d 187 (2d Cir. 1975). We note that in all but one of these cases we found that either the statute or the case law interpreting it provided for some defense permitting the defendant to prove his lack of knowledge. We therefore concluded that the statute was not one of strict liability and did not fall within the ambit of the Second Circuit's holding in *Lennon*. *Matter of Poon, supra* (Hong Kong statute containing rebuttable presumption of knowledge); *Matter of Pritchard, supra* (British law revised to permit

proof of lack of knowledge); *Matter of Awadh, supra* (Canadian case law interpreting scienter requirement); *Matter of Pasquini, supra* (Bahamian statute providing defense of lack of knowledge). Only in *Matter of Davis, supra*, did we find that strict liability existed where the alien's conviction for sale of hemp was obtained under a provision of the Australian Poisons Act that was devoid of any element of knowledge or mens rea. In the absence of any indication in the statute or case law of an available defense, we concluded that the Immigration and Naturalization Service had failed to establish deportability.

The respondent in this case was convicted under section 11550(a) of the California Health and Safety Code. That statute provides in pertinent part as follows:

> No person shall use, or be under the influence of any controlled substance ... except when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. It shall be the burden of the defense to show that it comes within the exception.

Cal. Health and Safety Code § 11550(a) (West 1993).

The respondent has presented no evidence indicating the intent of the California legislature, nor any interpretation by the state courts regarding the requirement of an element of mens rea in this statute. We note, however, that the California Penal Code contains the following provision: "In every crime or public offense there must exist a union, or joint operation of act and intent ...." Cal. Penal Code § 20 (West 1993).

Construing this statutory provision in *People v. Gory*, 170 P.2d 433 (Cal. 1946), a case involving possession of drugs, the California Supreme Court stated the following:

> But this does not mean that a positive, willful intent to violate the law is an essential ingredient of every offense. Sometimes an act is expressly prohibited by statute, in which case the intentional doing of the act, regardless of good motive or ignorance of its criminal character, constitutes the offense denounced by law. Instances illustrating this principle may be found in statutes enacted for the protection of public morals, public health, and the public peace and safety. If a specific intent is not made an ingredient of the statutory offense, it is not necessary to prove such specific intent in order to justify a conviction.

*Id.* at 435 (citation omitted). The court went on to conclude that neither intent nor knowledge was a required element under the statute defining the offense of possession of drugs. *Id.* at 436.

The decision in *Gory* was subsequently given conflicting interpretations by the lower appellate courts of California, however, some holding that knowledge of the presence of the substance alone was necessary for conviction, while others required proof that the defendant also knew the physical character of the article. See *People v. Telfer*, 284 Cal. Rptr. 913 (Cal. Ct. App. 1991), for the historical

development of the issue and citation of the relevant cases. This disagreement was settled by the Supreme Court of California in *People v. Gorg*, 291 P.2d 469 (Cal. 1955), where it quoted with approval but without explanation the following rule from two lower court cases: "In order to sustain a conviction of possession of narcotics it must be shown that the defendant had either physical or constructive possession, and that he was aware that the substance of which he had possession was a narcotic." *Id.* at 471 (quoting *People v. Candiotto*, 275 P.2d 500 (Cal. Dist. Ct. App. 1954), and *People v. Walker*, 262 P.2d 640 (Cal. Dist. Ct. App. 1953). The court finally clarified its position in *People v. Winston*, 293 P.2d 40 (Cal. 1956), stating that the requirement of knowledge of the nature of the substance possessed was "implicit in the discussion of the basic principles involved" in *Gory*. *Id.* at 45. Thus the court explained that while "specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object's narcotic character ... is required." *Id.* at 44.

This knowledge requirement was subsequently extended to prosecutions for sale of controlled substances in *People v. Daniels*, 537 P.2d 1232 (Cal. 1975). In that case the Supreme Court again found, as in *Gory*, that the statutory offense required only proof of a general criminal intent to commit the prohibited act and that no specific intent to violate the law was necessary for conviction. However, the court noted that the element of knowledge of the character of the substance sold had been judicially added as another prerequisite to conviction. *See also People v. Gorg, supra* (stating that awareness of the narcotic nature of a plant must be shown to sustain a conviction for cultivating marijuana); *People v. Carrusco*, 173 Cal. Rptr. 688 (Cal. Ct. App. 1981) (requiring proof of the dual knowledge elements of presence and nature of the substance for conviction for possession of drugs in a penal institution).

Thus, we find that the underlying presumption in California law that every crime contains an element of intent has been recognized through judicial interpretation as having applicability to drug offenses. By adding a knowledge requirement, the California courts have made evidence of an offender's guilty mind essential for a conviction in various contexts. *Cf. Tart v. Massachusetts*, 949 F.2d 490 (1st Cir. 1991) (noting that absent clear evidence of contrary legislative intent, criminal statutes are generally presumed to require the state to establish defendant's culpable state of mind); *United States v. Singleton*, 946 F.2d 23 (5th Cir. 1991) (stating that a presumption exists that statutes include an element of mental culpability), *cert. denied*, 502 U.S. 1117, (1992). *But cf. People v. Telfer, supra* (requiring no proof of knowledge of the physical character of the substance being manufac-

tured in prosecution for manufacture of a controlled substance due to the danger to the public health and safety and the remote likelihood that manufacture of the drug was innocent).

Moreover, we note that in this case, as in others involving convictions under the California use statute, the complaint charges that the use of drugs was "willful." *See, e.g., Sallas v. Municipal Court,* 150 Cal. Rptr. 543 (Cal. Ct. App. 1978); *In re Becerra,* 32 Cal. Rptr. 910 (Cal. Dist. Ct. App. 1963). The word "willful" has generally been stated to mean that "a person acts *knowingly* with respect to the material elements of the offense, unless a purpose to impose further requirements appears." *United States v. Hoyland,* 914 F.2d 1125 (9th Cir. 1990) (quoting American Law Institute, Model Penal Code § 2.02, p.249) (emphasis added); *see also Hirsch v. INS,* 308 F.2d 562, 567 (9th Cir. 1962) (quoting *Neely v. United States,* 300 F.2d 67, 72 (9th Cir.), *cert. denied,* 369 U.S. 864 (1962) (upholding a jury instruction that the word "willful" means that the act is done deliberately and with knowledge)); *American Surety Co. v. Sullivan,* 7 F.2d 605, 606 (2d Cir. 1925) (defining "willful" as meaning that the person charged with the duty knows what he is doing). This inclusion of the term "willful" in the respondent's complaint reinforces our opinion that a person could not be convicted of use of drugs under California law in the absence of some finding of guilty knowledge on the part of the user.

Finally, the offense defined by this statute, to "use, or be under the influence" of a controlled substance, itself implies an active and purposeful participation on the part of the offender. The definitions of the verb to "use" include the following: "to consume or take (as liquor or drugs) regularly"; "to carry out a purpose or action by means of"; "to put into service esp. to attain an end." *Webster's New Collegiate Dictionary* 1288 (1977). These terms suggest that use of a controlled substance inherently involves a conscious, voluntary act on the part of the user and, consequently a lack of innocence.[6] *Cf. United States v. Freed,* 401 U.S. 601, 609 (1971) (noting the obviousness of the fact that possession of handguns, which are as dangerous as narcotics, is not an innocent act). *See generally United States v. Erne,* 576 F.2d 212,

---

[6] See generally *Robinson v. California,* 370 U.S. 660 (1962), where, due to the involuntary nature of addiction, the Supreme Court found unconstitutional as cruel and unusual punishment that part of the precursor statute to section 11550 which prohibited being addicted to the use of narcotics. In its decision, the Court distinguished penalizing a person under the California statute for an addiction, which could be contracted innocently or involuntarily, from imposing punishment under statutes prohibiting the use of drugs or their possession, sale, or purchase, or for antisocial or disorderly behavior resulting from their administration, acts which were apparently considered to be volitional. *Id.* at 666-67.

215 (9th Cir. 1978) (stating that the court's concern about not requiring criminal intent for a conviction under the Internal Revenue Code was ameliorated by the fact that the crime could not be committed unknowingly); *United States v. Delahoussaye*, 573 F.2d 910, 913 (5th Cir. 1978) (approving of a magistrate's imposition of a "should have known" standard of scienter). We note in this regard that the respondent has made no claim that he contested the allegations against him on grounds that his use of drugs was innocent or that he was placed under their influence involuntarily.

On the basis of the following factors, we conclude that the respondent's conviction under the California statute prohibiting the use of controlled substances was not rendered without regard to his mental culpability: the nature of the crime of use of a controlled substance, the principle underlying the California penal laws that the element of intent is a prerequisite to crime, the California case law requiring guilty knowledge for a conviction for possession or sale of drugs, the fact that willfulness was alleged in this and other use cases, and the absence of any assertion by the respondent that his use of drugs was innocent or that he was placed under their influence involuntarily. We also note that the respondent has submitted no support for his premise that a person could be convicted of using or being under the influence of a controlled substance in California in circumstances where it was established that he or she was mistaken as to the nature of the drug or was tricked or forced into taking it.[7]

Having considered the above factors, we reject the respondent's assertions that guilty knowledge was irrelevant to his conviction under California law and that a finding of deportability would be in contradiction to *Lennon v. INS, supra*. Moreover, as we have previously pointed out, the Ninth Circuit recently reviewed a conviction under the same California statute at issue here and found the convicted alien deportable because the plain language of the deportation statute clearly "encompasses laws proscribing use or being under the influence of a controlled substance." *Flores-Arellano v. INS, supra*,

---

[7] In similar cases the criminal courts have found a requirement of mental culpability implicit in the statute or have allowed an affirmative defense to be made. *Cf. State v. Cleppe*, 96 P.2d 435 (Wash. 1981) (stating that an affirmative defense has been permitted for unwitting possession of drugs in order to ameliorate the harshness of the almost strict liability of the statute); *Matter of Awadh, supra*, and cases cited therein (describing Canadian cases in which lack of knowledge prevented conviction for possession of drugs despite strict liability of the statute). *See generally Morissette v. United States*, 342 U.S. 246, 252-56 (1952) (noting the unanimity with which courts have adhered to the idea that wrongdoing must be conscious to be criminal and have found knowledge or intent implicit in statutes defining common-law offenses, but also recognizing that exceptions have been made for "public welfare offenses").

at 362. That court, whose law is controlling in this case, noted no exceptions.

## APPLICABILITY OF LENNON

In light of the aforementioned changes in the immigration laws effected by .the Anti-Drug Abuse Act of 1986, we now find it appropriate to question whether *Lennon v. INS, supra,* remains applicable to the current statute at all. In this regard we note that the immigration law reviewed by the Second Circuit in its 1975 opinion addressed violations of laws proscribing the "illicit" possession of drugs, a term which carries with it the connotation of an intentional violation.[8] In 1986, however, Congress eliminated the words "illicit possession" from the statute, broadening the language of the law to render deportable aliens convicted of violating "any law ... relating to a controlled substance." *See* sections 212(a)(23) and 241(a)(11) of the Act, 8 U.S.C. §§ 1182(a)(23), 241(a)(11) (1988). Consequently, there no longer exists any statutory limitation on the types of drug offenses which subject an alien to exclusion or deportation. We find nothing in the legislative history of the Anti-Drug Abuse Act of 1986 to indicate that Congress meant to restrict its expansive language by allowing an exception to be made for statutes lacking a mens rea component. *See Flores-Arellano v. INS, supra. See generally De Osorio v. United States INS,* 10 F.3d 1034, 1043 (4th Cir. 1993) (relying on Congress' unquestionably restrictive intent to reject the argument that the principle of leniency to aliens should be applied in interpreting the statute regarding the availability of section 212(c) waivers). In fact, by progressively enacting more stringent immigration provisions relating to drug offenders, Congress has shown that it takes the matter of drug abuse and its concomitant crime in this country very seriously and that it has a diminishing tolerance for those aliens who violate statutes aimed at drug enforcement. In view of Congress' clear shift to enlarge the scope of the statute, we believe that the rationale of the Second Circuit's *Lennon* decision, which was based largely on an interpreta-

---

[8] The significance of the term "illicit" was emphasized in the *Lennon* decision by the Second Circuit, which noted that if the word merely meant "unlawful," it would be redundant. *Lennon v. INS, supra,* at 193 n.11. The fact that this restrictive language might be interpreted as limiting the scope of the exclusion ground to aliens convicted under statutes where guilty knowledge was required was also acknowledged by the Fifth Circuit in *Pasquini v. United States INS,* 557 F.2d 536, 539 (5th Cir. 1977). However, in that case the court specifically declined to decide whether to follow the Second Circuit's holding, finding it unnecessary because the Bahamian statute before it could not "be read so as to render intent or knowledge irrelevant in a prosecution for possession of marijuana." *Id.*

tion of the congressional intent underlying a version of the statute that is no longer in effect, has been severely undermined.

We acknowledge that the Second Circuit's perception of the intent of Congress resulted in part from its reliance on the following statement made by the Board in *Matter of Lennon, supra*: "[I]t is fair to state that in enacting section 212(a)(23), Congress did not intend to exclude persons who were entirely unaware that a prohibited substance was in their possession." *Id.* at 18. We reached this conclusion based solely on the fact that elements of knowledge or intent had been included in statutes prohibiting the possession of drugs under both federal law and the law of the District of Columbia. However, we note that a number of state statutes currently in force in this country that prohibit the use or possession of drugs do not specifically include any element of mental culpability for conviction.[9] Thus, although, as the Second Circuit observed, the concept of mens rea is a basic tenet of our system of criminal jurisprudence, it is not without limitations. *See United States v. Freed, supra,* at 607 (1971); *Morissette v. United States,* 342 U.S. 246, 250-52 (1952); *United States v. Hoyland, supra,* at 1129; *United States v. Erne, supra,* at 214; *Lennon v. INS, supra,* at 193; *see also* Anthony A. Cuomo, *Mens Rea and Status Criminality,* 40 S. Cal. L. Rev. 463, 473-74 (1967). The courts have recognized that "the authority of the State in the exercise of its police power to regulate the administration, sale, prescription and *use* of dangerous and habit-forming drugs" is unquestioned. *Minnesota ex rel. Whipple v. Martinson,* 256 U.S. 41, 45 (1921) (emphasis added); *see also Robinson v. California,* 370 U.S. 660, 664 (1962). Consequently, exceptions to the general requirement of guilty knowledge in criminal statutes have been carved out to permit the passage of laws to protect the public health, safety, and welfare, particularly in the area of drug enforcement. *See United States v. Dotterweich,* 320 U.S. 277 (1943); *United States v. Behrman,* 258 U.S. 280 (1922); *United States v. Balint,* 258 U.S. 250 (1922); *see also United States v. Freed, supra,* at 607, 609; *Morissette v. United States, supra,* at 250-60; *United States v. Hoyland, supra,* at 1128; *Stepniewski v. Gagnon,* 732 F.2d 567, 571 (7th Cir. 1984). Therefore, the concept of applying absolute liability in cases involving

---

[9] Several state statutes which, on their face, have no mens rea requirement include the following: Section 11.71.060(a)(1) of the Alaska Statutes (use or display); section 11350 of the California Health and Safety Code (possession); section 18-18-404(1) of the Colorado Revised Statutes (use); section 333.7404(1) of the Michigan Compiled Laws (use); section 28-417(g) of the Nebraska Revised Statutes (under the influence); section 2C:35-10(b) of the New Jersey Statutes (use and under the influence); section 2-405(A) of the Oklahoma Statutes (use); and section 69.50.401(d) of the Revised Code of Washington (possession).

drug violations is not foreign to our system of criminal justice. *See, e.g., United States v. Behrman, supra; United States v. Balint, supra.*

In this regard we note the Second Circuit's questionable comment that a person convicted under the British law at issue would be "quite innocent under our system of criminal justice." *Lennon v. INS, supra,* at 194 n.16. The court further stated that its holding would "not, of course, give any comfort to those convicted in the United States of drug violations." *Id.* at 194. Thus, the ruling in *Lennon* was specifically limited to convictions under *foreign* statutes and does not constrain us in this case.

Inasmuch as the immigration laws that were the basis for the Second Circuit's interpretation in *Lennon* have been changed to significantly broaden the scope of the statute regarding drug violations, we conclude that *Lennon v. INS* no longer remains controlling law. Furthermore, since the court's ruling was specifically limited to convictions under foreign laws, we find that the *Lennon* decision is, in any case, inapplicable in cases such as that now before us, where the alien was convicted in this country under the laws of the United States.

In light of the foregoing conclusions, the validity of our own decision in *Matter of Lennon, supra,* must also be reexamined. As we noted in our previous discussion, Congress has intensified its efforts to prevent drug offenders from avoiding deportation by passing increasingly more stringent laws in the 20 years since *Matter of Lennon* was written. By using the inclusive words, "any law or regulation ... relating to a controlled substance," Congress has exhibited its intent to expand the reach of the exclusion and deportation grounds to all drug offenders, setting virtually no limits beyond the exception provided for those convicted of a single possession offense involving 30 grams or less of marijuana. *See Flores-Arellano v. INS, supra.* Inasmuch as the statute underlying our decision in *Matter of Lennon* has been amended to include this comprehensive language, we no longer consider the basic premise for our conclusion regarding congressional intent in that case to be tenable. Accordingly, we now find it appropriate to overrule *Matter of Lennon.* In addition, *Matter of Wolf, supra,* and *Matter of Davis, supra,* which followed *Matter of Lennon,* must be overruled as well. Finally, we also withdraw from *Matter of Poon, supra, Matter of Pritchard, supra, Matter of Awadh, supra,* and *Matter of Pasquini, supra,* to the extent they indicate that aliens convicted under a statute without any element of scienter are not subject to exclusion or deportation.

Inasmuch as we reject the respondent's contention on appeal that his conviction does not render him deportable, the appeal will be dismissed.

862

**ORDER:** The appeal is dismissed.

*CONCURRING OPINION:* David B. Holmes, Alternate Board Member

I respectfully concur.

I concur in the finding that Congress intended to include the crimes of use and being under the influence of drugs as deportable offenses under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1988). I also agree that, even if one assumes that *Lennon v. INS*, 527 F.2d 187 (2d Cir. 1975), is controlling precedent, the California law under which this respondent was convicted does not fall within the ambit of *Lennon*. This being the case, I do not find it necessary and would not reexamine on this record the validity of *Lennon v. INS, supra,* and its progeny.