PREGERSON, Circuit Judge,
with whom
Judge B. FLETCHER joins, dissenting:
Lujar-Armendariz v. INS, 222 F.3d 728 (9th Cir.2000), holds that equal protection of the laws is violated by denying Federal First Offender Act (“FFOA”) relief to aliens whose first-time minor drug offenses were expunged by a state-court judge after the offender successfully completed a state-approved rehabilitation program. The majority overturns this well-established circuit precedent and in doing so overturns a number of our cases that followed the Lujan-Armendariz rule. In addition to the three-judge panel opinion in this case, these overturned cases include Rice v. Holder, 597 F.3d 952 (9th Cir.2010), Romero v. Holder, 568 F.3d 1054 (9th Cir.2009), Ramirez-Altamirano v. Holder, 563 F.3d 800 (9th Cir.2009), Dillingham v. INS, 267 F.3d 996 (9th Cir.2001), and Cardenas-Uriarte v. INS, 227 F.3d 1132 (9th Cir.2000). The majority throws out more than ten years of our precedent without so much as a cursory *704 examination of the question whether Congress intended to maintain FFOA treatment for state-expunged first-time minor drug offenses. Specifically, the majority fails to address the question whether Congress’s 1996 definition of “conviction,” set forth under § 1101(a)(48)(A) of the Immigration and Nationality Act (“INA”), 8 U.S.C. § 1101 (a)(48)(A), includes court-ordered expungements at all. The majority skips over this statutory interpretation question and improperly jumps to the constitutional equal protection question instead. See, e.g., Standard Oil Co. of California v. Arizona, 738 F.2d 1021, 1023 (9th Cir.1984) (“[W]e must, if at all possible, resolve cases on statutory grounds before reaching constitutional questions”) (citing Escambia County, Fla. v. McMillan, 466 U.S. 48, 51, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984) (per curiam)).
To make matters worse, the majority denies the petition for review in this case even though it decides to apply its new rule denying state offenders FFOA relief for state-expunged first-time drug convictions prospectively only. The result is that the petitioner will be separated from his citizen wife and two American-born children because of a minor drug conviction — one that a California state judge expunged because the petitioner successfully completed a state rehabilitation program. Such a result is unjust. The majority compounds that injustice by ensuring that thousands of minor drug offenders will suffer the same cruel separation from their families in the days ahead.
America is a second-chance nation. Each year, thousands of people, some of them immigrants to this country, are caught up in our justice system by making the mistake of committing a minor drug offense. But Congress through the FFOA has seen fit to give those folks who commit the most minor drug offenses an opportunity — a second chance — to redeem themselves through rehabilitation, and thereafter walk a straight and narrow path to become productive members of society and a credit to their families. For some immigrants, including thousands of lawfully-admitted residents, this second chance also means being able to stay in the country with their families intact. The majority’s abandonment of our precedent today means that first-time minor drug offenders within our circuit who have fully complied with their state’s stringent rehabilitation programs, and who have had their minor convictions expunged by a state court judge, nonetheless will be subject to removal from the United States. For them, there will be no second chance. Thousands of families will be rendered asunder, and tens of thousands of American-born children will suffer the consequences. This harsh result, I submit, is repugnant to the values of kindness, compassion, and fundamental fairness.
I therefore strongly dissent.
A.
This dissenting opinion starts out where the majority should have, by examining the Board of Immigration Appeal’s (“BIA”) decision in the case now before us. Analyzing Nunez-Reyes’s petition for review, I adhere to Lujar-Armendariz and its progeny. Because the majority walks away from the Lujan-Armendariz rule only prospectively,[1] the majority’s pronouncement does not apply to Nunez-Reyes’s case.
Flavio Nunez-Reyes (“NunezAEteyes”) is a thirty-five-year-old national of Mexico who entered the United States without *705 inspection in 1992. His United States citizen wife and two American-born children reside in San Jose, California.
In 2001, Nunez-Reyes was charged with one felony count of possession of methamphetamine, in violation of California Health & Safety Code § 11377(a). This felony charge was later reduced to a misdemean- or. Nunez-Reyes was also charged, under the same complaint, with using or being under the influence of methamphetamine, in violation of California Health & Safety Code § 11550(a). The charges against Nunez-Reyes were ultimately dismissed pursuant to California’s expungement statute for drug possession offenses, which states that the state court “shall ... set aside [the conviction] and ... dismiss the indictment” if the defendant successfully completes probation and that “both the arrest and the conviction shall be deemed never to have occurred.” CaLPenal Code § 1210.1(e)(1).[2]
In early 2002, the federal government charged Nunez-Reyes under 8 U.S.C. § 1182(a)(6)(A)(i) as a removable alien. Nunez-Reyes conceded removability but applied for adjustment of status, cancellation of removal, and, alternatively, voluntary departure. The Immigration Judge (“U”) held that the state conviction rendered Nunez-Reyes ineligible for any form of relief. The BIA affirmed the IJ’s decision and held that Nunez-Reyes could not avail himself of relief under the FFOA because his conviction for using or being under the influence of methamphetamine was “not one for which federal first offender treatment would be available.” The BIA reasoned that the FFOA applies only to simple possession offenses, and that being under the influence of methamphetamine is not a simple possession offense. While recognizing that our court has applied FFOA treatment to convictions for “lesser offenses,” the BIA held that Nunez-Reyes had not pleaded down from a charge of simple possession and that being under the influence of methamphetamine is not a “lesser offense” than that of simple possession.
The matter came before our court on appeal. Under de novo review, we faithfully applied our precedent, which holds that state-expunged first-time drug possession dispositions that would be eligible for FFOA treatment are not convictions for purposes of the immigration laws. Nunez-Reyes v. Holder, 602 F.3d 1102, 1104 (9th Cir.2010) (per curiam) (citing Lujan-Armendariz, 222 F.3d at 734-49, and Garberding v. INS, 30 F.3d 1187, 1190 (9th Cir.1994)). Under the law of our circuit, FFOA treatment also applies to a “lesser offense” than that of simple possession of a controlled substance. See Cardenas-Uriarte v. INS, 227 F.3d 1132, 1137 (9th Cir.2000) (noting that congressional intent indicated that the lesser crime of possession of drug paraphernalia should be given FFOA treatment). Thus, under the FFOA,
an alien cannot be deemed “convicted” for immigration purposes if he can demonstrate that (1) the conviction was his first offense; (2) he had not previously been accorded first offender treatment; (3) his conviction was for possession of drugs, or an equivalent or lesser charge such as possession of drug paraphernalia ...; and (4) he received relief under a state rehabilitative statute.
Ramirez-Altamirano, 563 F.3d at 812 (citation omitted). Nunez-Reyes easily met the first, second, and fourth requirements *706 for FFOA relief. The only question left for the panel was whether Nunez-Reyes’s conviction for using or being under the influence of methamphetamine was an “equivalent or lesser charge” than simple possession of drugs.
Importantly, the panel relied on our court’s recent decision in Rice v. Holder, 597 F.3d 952, 957 (9th Cir.2010), where we held that a misdemeanor conviction for being under the influence of a controlled substance qualifies as a “lesser offense” eligible for FFOA treatment. In Rice, the petitioner was charged with one felony count of possession of cocaine and one misdemeanor count of using or being under the influence of a stimulant under California law.[3] Id. at 954. Rice pleaded nolo contendere and was convicted of both offenses. Id. Upon completion of three years of probation, the court set aside Rice’s pleas of nolo contendere, entered pleas of not guilty, and dismissed the complaint. Id. During removal proceedings, the IJ found Rice statutorily ineligible for cancellation of removal because he had been convicted for violating a controlled substance law. Id. The BIA dismissed Rice’s appeal, holding that Rice would not have been eligible for FFOA treatment for the offense of being under the influence of a controlled substance because only simple possession offenses were eligible for relief, and thus, Rice stood convicted for immigration purposes. Id.
In Rice, we granted the petition for review and held that “persons convicted of using or being under the influence of a controlled substance, where that offense is less serious than simple drug possession, are eligible for the same immigration treatment as those convicted of drug possession under the FFOA.” Id. at 957. Following the precedent set forth in Cardenas-Uriarte, 227 F.3d at 1137, we reasoned that there was “no relevant distinction ... between the offenses of possession of drug paraphernalia and using or being under the influence of a controlled substance, as both are generally less serious than simple possession.” Rice, 597 F.3d at 956; see also Medina v. Ashcroft, 393 F.3d 1063, 1066 (9th Cir.2005). We further noted that “we can be sure that using or being under the influence of a controlled substance is a lesser offense because it is a misdemeanor while possession of cocaine is a felony.”[4] Id. (internal marks and citation omitted). The BIA’s decision in Nunez-Reyes’s case was rendered before our well-reasoned decision in Rice.
As Judge Graber’s concurrence to the panel opinion correctly points out, Rice “answered the legal questions raised in [Nunez-Reyes’s] case, and no factual distinction exists.” Nunez-Reyes, 602 F.3d at 1105 (Graber, J., concurring) (emphasis added). According to our precedent, then, Nunez-Reyes is eligible for FFOA treatment and his state-expunged convictions cannot be used as grounds to deny him relief from removal. The three-judge panel granted Nunez-Reyes’s petition and remanded for further proceedings. Id. The panel got it right.
Yet, Judge Graber’s en banc majority opinion now holds that Nunez-Reyes’s petition for review should be denied. It does *707 so by overruling Rice, reasoning that “being under the influence is not a lesser crime than simple possession” because it is “not a possession crime at all, and it is thus qualitatively different from any federal conviction for which FFOA treatment would be available.” Maj. Op. at 695. The majority further reasons that “[bjeing under the influence is not a lesser offense to simple possession because it arguably is more serious than mere possession.... ” Maj. Op. at 695.
The majority’s reasoning is flawed. “Our review is limited to the actual grounds relied upon by the BIA.” Ramirez-Altamirano v. Holder, 563 F.3d 800, 804 (9th Cir.2009) (citation omitted). “If we conclude that the BIA’s decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.” Id. The BIA distinguished this case from Lujan-Armendariz because Nunez-Reyes was charged and “convicted under California law for using or being under the influence of methamphetamine.” The BIA found Nunez-Reyes’s conviction for using or being under the influence of methamphetamine “not analogous to any offense for which federal first offender treatment would be available,” and therefore held that the conviction’s dismissal was “not akin to an FFOA expungement.” In short, the BIA stated that using or being under the influence of methamphetamine did not qualify for FFOA treatment because it was neither a simple possession offense nor a “lesser” offense than simple possession of methamphetamine.
However, “[u]nder these circumstances, concluding that [using or being under the influence of a controlled substance] is not included in the First Offender Act would frustrate congressional intent and lead to an absurd result.” Cardenas-Uriarte, 227 F.3d at 1137. Congress intended the FFOA “as a limited federal rehabilitation statute that permits first-time drug offenders who commit the least serious type of drug offense to avoid the drastic consequences which typically follow a finding of guilt in drug cases.” Lujan-Armendariz, 222 F.3d at 735. Nunez-Reyes’s conviction for using or being under the influence of methamphetamine is the “least serious type of drug offense.” In contrast to Nunez-Reyes’s felony possession of methamphetamine charge, his conviction for using or being under the influence of methamphetamine was a misdemeanor. See Cal. Health & Safety Code §§ 11377(a), 11550(a). And Nunez-Reyes’s drug use is not even a federal crime: there is no equivalent federal criminal statute that prohibits using or being under the influence of a controlled substance. See 21 U.S.C. §§ 841-865. If being under the influence “arguably is more serious than mere possession .,. [,]” Maj. Op. at 695, the majority fails to explain why neither Congress nor the State of California chose to treat it as such. Thus, by denying Nunez-Reyes the benefit of FFOA treatment for his expunged conviction for using or being under the influence of drugs, the majority not only frustrates the intent of Congress but also ignores the criminal statutory schemes of both Congress and California, which both treat using or being under the influence as a “least serious type of drug offense.”
Nor does the distinction between simple possession and using or being under the influence of drugs make sense under these circumstances. Congress criminalized the possession of drugs, at least in part, because it did not want people to use drugs. Thus, given the underlying purpose of the FFOA, the FFOA’s rehabilitative scheme logically applies to protect first time drug users, along with first time drug possessors, “against the harsh consequences that *708 follow from a drug conviction.” Lujan-Armendariz, 222 F.3d at 737.
By way of analogy, we have previously held that 8 U.S.C. § 1227(a)(2)(B)(i) — an exception to the automatic removability of aliens convicted of “a single offense involving possession for one’s own use of 30 grams or less of marijuana” — implicitly applies to both possession and actual use of marijuana. See Medina, 393 F.3d at 1066. This “ ‘makes absolute logical sense’ ” because “use of drugs ‘has generally been considered a less serious crime than possession.’ ” Id. (quoting Flores-Arellano v. INS, 5 F.3d 360, 363, n. 5 (9th Cir.1993)). Here, as in Medina, “[i]t defies reason to conclude that Congress wanted to protect a person who possessed [methamphetamine] in small amounts for his own use, but then wanted to remove him from the country if he did so use it.” Id. Thus, distinguishing between possession of drugs and their use, allowing only the former to qualify for FFOA treatment, frustrates congressional intent and leads to absurd results.
Moreover, had Nunez-Reyes been prosecuted by the federal government rather than by the State of California, he would have been charged only with simple possession of methamphetamine because, as mentioned previously, there is no federal criminal statute prohibiting using or being under the influence of a controlled substance. See 21 U.S.C. §§ 841-865. As we noted in Rice, “[a]s with possession of drug paraphernalia, ‘Congress would never have considered including’ under the FFOA the offense of using or being under the influence of a controlled substance, because no federal statute covers that crime.” Rice, 597 F.3d at 956 (quoting Cardenas-Uriarte, 227 F.3d at 1137, and citing 21 U.S.C. §§ 841-865); see also Ramirez-Altamirano, 563 F.3d at 808. In fact, federal law imposes only a civil penalty for possession of a controlled substance in “an amount that, as specified by regulation of the Attorney General, is a personal use amount....” 21 U.S.C. § 844a. Thus, Nunez-Reyes would have qualified for FFOA treatment had he been fortunate enough to have been caught by federal agents rather than by state officers.
To support its position, the majority claims that in Cardenas-Uriarte, 227 F.3d at 1137, and Ramirez-Altamirano, 563 F.3d at 808-09, “it was clear that the conviction was for a ‘lesser offense’ because the alien was convicted of a single crime that carried a lesser penalty than the crime of simple possession.” Maj. Op. at 695. Contrary to this reasoning, however, neither case relies on the number of convictions or on the fact of “possession.” In Cardenas-Uriarte, possession of drug paraphernalia under Arizona law was considered a “lesser offense” not because it was the only offense the petitioner had pleaded to, but because “it would be a misdemeanor once probation was successfully completed while possession of the drugs would have been a felony.” 227 F.3d at 1137. In Ramirez-Altamirano, the possession of drug paraphernalia offense under California law was considered a “lesser offense” because “it would be absurd to deny [FFOA] relief to individuals who possess the utensils incidental to drug ingestion but grant relief to those who possess the actual illicit drugs,” not because the petitioner pleaded guilty to only the misdemeanor paraphernalia possession charge. 563 F.3d at 809. Thus, in neither case was the number of offenses or the fact of “possession” dispositive. The majority’s conclusion, therefore, remains unsupported.
It is difficult to square the majority’s prospective-only application of the new rule it sets out today with the denial of *709 Nunez-Reyes’s petition for review. As the majority recognizes, a substantial number of aliens acted in reliance on Lujan-Armendariz when they pleaded guilty to drug crimes under state law. Maj. Op. at 692-93. Relying on equitable considerations, the majority concludes that we must protect the reliance interests of those state offenders who may have forgone their constitutional rights under the reasonable belief that they would not face harsh immigration consequences for pleading guilty and undergoing rehabilitative drug treatment. Maj. Op. at 693-94. The majority recognizes that Lujan-Armendariz applies to the petitioner, Nunez-Reyes, but still denies his petition for review. The majority fails, however, to distinguish Lujan-Armendariz and its progeny from Nunez-Reyes’s case. Nor can the majority adequately explain why Rice was wrongly decided. Therefore, under Lujan-Armendariz, Cardenas-Uriarte, Ramirez-Altamirano, and Rice, I would grant Nunez-Reyes’s petition for review.
B.
The majority’s review of the BIA’s opinion flawed. Additionally, it remains unclear why the majority opinion even reaches the issue of Lujanr-Armendariz’s viability. The BIA, in Nunez-Reyes’s case, distinguished Lujan-Armendariz to the majority’s satisfaction, but, puzzlingly, the opinion devotes the bulk of its efforts to overruling Lujan-Armendariz. Because we must limit our review to grounds actually discussed by the BIA, this ruling is out of bounds and entirely improper. Pascua v. Holder, 641 F.3d 316, 318 (9th Cir.2011).
Moreover, the majority overrules Lujan-Armendariz on constitutional grounds without addressing the independent statutory justification, on which Lujanr-Armendariz expressly relied, for excluding state-expunged dispositions from the definition of “conviction.” 222 F.3d at 739-43, 745-46. Prudence counsels that we exert more effort before abandoning such long-established, eleven-year-old precedent.
1.
In Lujan-Armendariz, based in part on an equal protection analysis, we held that “persons whose offenses would qualify for treatment under the [FFOA] but who are convicted and have their convictions expunged under state laws may not be removed on account of those offenses.” 222 F.3d at 732. In so holding, Lujan-Armendariz faithfully adhered to congressional intent underlying the FFOA in “permit[ting] first-time drug offenders who commit the least serious type of drug offense to avoid the drastic consequences which typically follow a finding of guilt in drug cases.” Id. at 735.
Given the FFOA’s directive that dispositions eligible for FFOA relief “shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose,” 18 U.S.C. § 3607(b) (emphases added), we must give meaning to the statute within the immigration context. As both the majority and the Supreme Court recognize, “deportation is an integral part — indeed, sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.” Maj. Op. at 693 (citing Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473, 1480, 176 L.Ed.2d 284 (2010)). And there can be little doubt that the “particularly severe ‘penalty’ ” of removal, id. at 1481, is one of the most “drastic consequences” that results from a drug conviction. To fully effectuate Congress’s intent to insulate first-time drug offenders who complete ex-pungement programs from the extremely *710 harsh consequences that would otherwise result from their actions, FFOA relief must apply not only to eligible aliens convicted of federal offenses, but also to those convicted of state offenses. Otherwise, the FFOA loses much of its efficacy because the relief it offers can be circumvented via the state criminal justice system.
2.
Keeping these principles in mind, even if the equal protection analysis set forth in Lujaiu-Armendariz is abandoned, it does not follow that state-expunged first-time drug offense convictions are ineligible for FFOA treatment. In Lujan-Armendariz, we did not consider what effect the 1996 amendment to the term “conviction,” promulgated in 8 U.S.C. § 1101(a)(48)(A), had on state expungements specifically. Instead, we held that the 1996 amendment did not repeal the FFOA and we then simply extended this conclusion to state expungements on the basis of equal protection. 222 F.3d at 742-43. Put another way, Lujan-Armendanz’s equal protection rationale had necessary force only absent an answer to the question of “what effect the new definition[of conviction] has on state expungements under state rehabilitation laws in general.” 222 F.3d at 742. Assuming that Lujan-Armendariz’s equal protection analysis no longer stands, we must now engage in this statutory analysis.
Congress’s 1996 amendment to the term “conviction” suggests that it had no intention of altering the BIA’s decisions to include state- and federally-expunged convictions from that term. The majority, in leaping to the conclusion that equal protection is not violated because Congress could have made a decision’ to treat similarly-situated aliens differently under rational basis review, declines to engage in any analysis, through statutory interpretation or otherwise, of whether Congress actually intended to do so. The majority simply assumes that “Congress intended that convictions for state-law simple possession have adverse immigration consequences,” Maj. Op. at 694, but fails to explain from where it divines such congressional intent. We should not prematurely review Congress’s purported distinction between state and federal expungement under a cursory form of rational basis review without first looking at the relevant statutes to determine whether Congress actually intended for such a distinction to exist.
In 1996, Congress addressed the meaning of the term “conviction” by enacting the following definition:
The term “conviction” means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien’s liberty to be imposed.
8 U.S.C. § 1101(a)(48)(A).
The legislative history behind the 1996 amendment to the definition of “conviction” fully supports the conclusion that state-expunged first-time drug possession offenses are not “convictions” under § 1101(a)(48)(A) of the INA. 222 F.3d at 739-43. In enacting 8 U.S.C. § 1101(a)(48)(A), Congress adopted most of the BIA’s definition of “conviction,” as it was laid out in Matter of Ozkok, 19 I. & N. Dec. 546, 551-52 (BIA 1988). Notably, the amended definition makes no mention of “the rule, cited with approval by the BIA in Ozkok, that expunged convictions cannot serve as the basis for deportation.” *711 Lujan-Armendariz, 222 F.3d at 742 n. 23. Moreover, Congress promulgated its new definition of “conviction” just after the BIA reaffirmed its rule that immigration consequences do not attach to state-expunged first-time drug possession offenses, and that they would be treated the same as federal convictions expunged under the FFOA. See Matter of Manrique, 21 I. & N. Dec. 58, 64 (BIA 1995). As amicus points out, when Congress adopts an agency interpretation, Congress intends the agency construction to be incorporated into the statute. See Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 813, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (When Congress “codifies a judicially defined concept, ... absent an express statement to the contrary, ... Congress intended to adopt the interpretation placed on that concept by the courts.”); Lorillard v. Pons, 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (the presumption that Congress acted with knowledge is particularly appropriate where Congress “exhibited both a detailed knowledge of the [incorporated] provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation.”); Hing Sum v. Holder, 602 F.3d 1092, 1099-1101 (9th Cir.2010) (Where Congress uses terms that have settled meanings in BIA case law, “Congress means to incorporate the established meaning of these terms.”).
We have previously acknowledged that the 1996 amendment to the definition of “conviction” in § 1101(a)(48)(A) “said nothing about expungement, and could well be interpreted to establish only when a conviction occurred without determining what might be the effect of a later expungement.” Murillo-Espinoza v. INS, 261 F.3d 771, 774 (9th Cir.2001) (citing to Lujan-Armendariz, 222 F.3d at 741-42). And, notably, consistent with every other circuit, the majority does not overrule Lujan-Armendariz’s holding that the 1996 amendment to the definition of “conviction” in § 1101(a)(48)(A) of the INA did not expressly or impliedly repeal the FFOA. Its holding thereby leaves intact the FFOA’s exception for expunged first-time controlled substance offenses from the definition of “conviction.” See Lujan-Armendariz, 222 F.3d at 737.
Thus, in enacting the 1996 amendment, “it appears that Congress was concerned primarily ... with the question whether aliens could be deported during the period that followed a determination of guilt but preceded the expungement of the offense,” but had no intention of altering the longstanding rule that convictions that are subsequently expunged under either federal or state law “no longer have any effect for immigration” purposes. Id. at 742 n. 23. Congress’s decision to enact essentially verbatim the majority of Ozkok’s definition of conviction, while excluding only one part of that definition that has no bearing here, makes it particularly appropriate to read § 1101(a)(48)(A) as incorporating the agency’s treatment of expunged convictions. Evidently, Congress approved the rule established by the BIA in Manrique and recognized in Ozkok.
An analysis of the relevant statutes and their history reveals an independent justification for excluding first-time minor drug offenses expunged under state law from the definition of “conviction” in § 1101(a)(48)(A). Congress evidently approved of the long-standing principle that state-expunged first-time simple possession convictions do not carry adverse immigration consequences and, in enacting the 1996 amendment, had no intention of disturbing it.
3.
In failing to reach this statutory question and instead relying only on its equal *712 protection analysis, the majority implicitly defers to the BIA’s post-1996 interpretation of “conviction,” which followed the promulgation of § 1101(a)(48)(A) of the INA. See, e.g., Murillo-Espinoza, 261 F.3d at 774 (according Chevron deference to the BIA’s “permissible construction of the [INA] statute”).
After the 1996 amendments to § 1101(a)(48)(A), the BIA reversed its previous course and held that the 1996 definition of “conviction” includes convictions expunged under state rehabilitative statutes. In re Salazar-Regino, 23 I. & N. Dec. 223, 235 (BIA 2002) (en banc). Pursuant to this interpretation, the BIA, since 2002, has refused to follow in other circuits our circuit’s application of FFOA treatment to first-time drug offenses expunged under state law. Id. at 235 (stating that the BIA “decline[s] to apply the ruling in [Lujan-Armendariz ] to cases arising outside of the jurisdiction of the Ninth Circuit”). In so doing, the BIA has implicitly rejected the statutory rationale for treating state and federal expungements equally, and has instead relied only on the equal protection holding of Lujan-Armendariz on appeals within this circuit.
We need not, however, defer to the BIA’s interpretation of the term “conviction” as it is used in § 1101(a)(48)(A). Deference to the BIA’s interpretation of a “statute which it administers” is proper under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Deference to the BIA’s interpretation of the definition of “conviction” as used in § 1101(a)(48)(A), however, is entirely inappropriate, because that term is used not only for purposes of immigration law, but also in the criminal law context. Specifically, § 1101(a)(48)(A)’s definition of conviction controls the meaning of the term in the federal illegal reentry statute, 8 U.S.C. § 1326, and is correspondingly referenced in the United States Sentencing Guidelines. Because “a criminal statute[] is not administered by any agency but by the courts,” its interpretation is our independent responsibility. Crandon v. United States, 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990); see also de Jesus Melendez v. Gonzales, 503 F.3d 1019, 1023 (9th Cir.2007) (stating that no deference is owed to the BIA’s interpretation of statutes it does not administer, including the FFOA).
The Supreme Court has decided many cases concerning the term “aggravated felony” — which, like “conviction,” is defined in § 1011(a) and used in § 1326 — without deferring to the BIA and without applying the Chevron framework. See, e.g., Carachuri-Rosendo v. Holder, 560 U.S. -, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010); Nijhawan v. Holder, — U.S. —, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009); Lopez v. Gonzales, 549 U.S. 47, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006); Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). Similarly, here, we must conduct our own interpretation of the statute and need not defer to the BIA’s interpretation of “conviction.” Because construction of this term has consequences for the administration of criminal law, it is the independent duty of the judiciary, and not the BIA, to assign to the term a meaning.
Relatedly, even if, in discharging our duty, we were to find that § 1101(a)(48)(A) is ambiguous, its application in the criminal law context requires us to “resolve the ambiguity favorably to the alien, pursuant to the principle of lenity applicable with respect to the gravity of removal.” Retuta v. Holder, 591 F.3d 1181, 1189 (9th Cir.2010) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), and Lara-Cazares v. Gonzales, 408 F.3d 1217, 1221 (9th Cir.2005)). The *713 majority entirely fails to consider how its holding will apply to criminal laws.
C.
As the previous analysis reveals, an independent statutory justification can rescue the state-expungements holding of Lujan-Armendañz and its progeny. Nonetheless, that decision was properly decided on the basis of its equal protection analysis. I reject the majority’s equal protection analysis in this case, by which it overrules Lujan-Armendariz.
The rule we articulated in Lujan-Armendariz derives from our holding in Garherding v. INS, 30 F.3d 1187, 1191 (9th Cir.1994). Under Garberding, “persons who received the benefit of a state ex-pungement law were not subject to deportation as long as they could have received the benefit of the [FFOA] if they had been prosecuted under federal law.” Lujan-Armendariz, 222 F.3d at 738. Garberding’s equal protection analysis focused on whether similarly-situated aliens could be treated differently based on their conduct. Id. “Garberding ... establishes that aliens may not be treated differently based on the ‘mere fortuity’ that they happen to have been prosecuted under state rather than federal law, or under different state laws, as there is no rational basis for distinguishing among the affected groups.” Id. at 748. Lujan-Armendariz simply adopted and applied that same principle after finding that Congress’s new definition of “conviction” had not repealed the FFOA’s first-time offense exception. Id. at 742. We applied equal protection because “no rational basis exists for affording [FFOA] relief to an alien under federal expungement law while denying relief to identically situated aliens who qualify for similar treatment under state expungement laws.” Id. at 743 n. 24.
1.
The majority offers two purportedly rational bases for not extending FFOA treatment to aliens whose convictions have been expunged under state law. First, the majority adopts the rationale offered by the Third Circuit in Acosta v. Ashcroft, 341 F.3d 218, 227 (3d Cir.2003), that
Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law.
This rationale, however, is belied by the fact that the FFOA requires that the offender “has not, prior to the commission of [a simple possession] offense, been convicted of violating a Federal or State law relating to controlled substances.” 18 U.S.C. § 3607(a)(1). If Congress was worried that state criminal justice schemes, overwhelmed by heavy caseloads, might allow dangerous offenders to plead down, they presumably also recognized that offenders could simply plead to something other than a violation of a controlled substances law and thereby achieve the same result.
Moreover, the Supreme Court has recently held, in the context of determining what constitutes an “aggravated felony,” that the immigration consequences of state convictions must be applied as if the offense had been prosecuted in federal court. See Lopez v. Gonzales, 549 U.S. at 47, 127 S.Ct. 625; Carachuri-Rosendo, 130 S.Ct. at 2577. If Congress is willing to acknowledge that state convictions have force in the federal immigration context, it seems wholly inconsistent to assume that Con *714 gress intended to treat state expungements differently.
2.
The second purportedly rational basis offered by the majority is slightly more plausible. Because not all states have ex-pungement schemes, the majority offers, “Congress reasonably could have concluded that, in the strong interest in uniformity, it would not recognize any state ex-pungements rather than adopt a piecemeal approach.” Maj. Op. at 690 (citing Nunez-Reyes, 602 F.3d at 1107 (Graber, J., concurring)).
This rationale, however, is also flawed. First, under the majority’s reasoning, Congress’s hypothetical interest in uniformity cuts both ways. The majority opinion assumes that Congress’s interest in uniformity in the immigration context requires leveling down to the lowest common denominator and excluding all state-expunged convictions from FFOA treatment. But the FFOA ensures its own uniformity by providing that all offenses expunged under the Act will not be regarded as convictions “for any ... purpose.” 18 U.S.C. § 3607(b). There is no reason to believe that Congress’s interest in uniformity among the states is more important than Congress’s interest in uniformity in the treatment of first-time drug offenders whose convictions have been expunged.
Notably, aliens whose state convictions have been expunged are not similarly situated to those whose states have no ex-pungement schemes in place. Aliens whose convictions were expunged under state expungement schemes have undergone court-mandated rehabilitation. The FFOA was passed to ensure that those first-time offenders who undergo rehabilitative measures and ultimately get their charges dismissed or their convictions expunged are afforded a second chance. The only aliens who meet this criteria are those in states with expungement schemes. Unlike the disparity created by the majority, then, distinguishing between aliens in states with expungement schemes and those in states that do not have expungement schemes survives rational basis review and undermines neither Congress’s intent under the FFOA, nor states’ rehabilitative schemes.
Second, I note that any alien, from any state, may have his first-time federal drug offense expunged under the FFOA and that offense can no longer be considered as a basis for removal. It is not the case, therefore, that affording state expungements FFOA treatment would render aliens from states without state expungement schemes entirely ineligible for FFOA treatment, while those from states with expungement schemes would qualify for such treatment. Any and all may receive such treatment for federal convictions expunged under the FFOA. To the contrary, then, FFOA treatment of state ex-pungements ensures that aliens from states that offer alternatives to federal expungement programs are not severely punished merely because they were presented with and took such an alternative.
3.
There is simply no principled reason why Congress should treat offenses subject to state expungement differently from identical or lesser offenses that would have been eligible for FFOA treatment had they been prosecuted as federal crimes. Equal protection considerations prohibit unequal treatment of similarly-situated individuals. See Garberding, 30 F.3d at 1190. Aliens who have committed identical offenses and have their convictions expunged, whether directly through the FFOA or as a result of a state rehabilitation scheme, are similarly situated. Under *715 Lujan-Armendariz, the question has always been whether the expunged offense would have been covered under the FFOA if charged as a federal crime. 222 F.3d at 738 n. 18. And we have been consistent in asking and answering that question. See Ramirez-Altamirano, 563 F.3d at 810. To do otherwise would be to allow non-citizens’ due process rights to hinge on jurisdictional happenstance. As we stated in Lujarir-Armendariz, “there is no rational basis for a federal statute that treats persons adjudged guilty of a drug offense under state law more harshly than persons adjudged guilty of the identical offense under federal law.” Id. at 749.
Lujan-Armendariz’s equal protection analysis was based in part on the irrationality of treating aliens differently based on the “mere fortuity” whether a federal prosecutor sends a drug case to the state prosecutor or chooses to keep it, or vice versa. 222 F.3d at 738 (citing Paredes-Urrestarazu v. INS, 36 F.3d 801, 811 (9th Cir.1994)). Without the equal treatment afforded under Lujarir-Armendariz, this unfettered prosecutorial discretion may now be exercised to dispositively determine whether an individual’s first-time drug offense will yield extremely harsh immigration consequences; that is, whether any particular defendant will benefit from the FFOA. This result is unsettling, to say the least.
Our precedent requires that we give extra deference to Congress in the immigration context. Abebe v. Mukasey, 554 F.3d 1203, 1206 (9th Cir.2009). But we cannot allow “rational basis review” to serve as a rubber stamp to what a hypothetical Congress might have intended. “Justifications for overruling one of our court’s longstanding precedents should be made of sterner stuff.... We must place some rational bounds on what survives rational basis review if the constitutional right of equal protection is to have any meaning whatsoever outside the context of suspect classifications.” Id. at 1210 (9th Cir.2009) (Clifton, J., concurring); see also id. at 1215 (Thomas, J., dissenting) (“[I]n order to be rational, the reason must be consistent]”). Until now, employing the rational basis test, we treated similarly-situated first-time drug offenders equally. I see no reason to abandon that practice, particularly when any rational basis now offered is no more or less true today than it was eleven years ago when we decided Lujan-Armendariz.
The majority offers what it believes to be some consolation to non-citizen first-time drug offenders: from now on, “aliens will be able to make a fully informed decision whether to plead guilty or to exercise their constitutional rights, such as the right to trial by jury.” Maj. Op. at 693. But it will be of little comfort to aliens charged with first-time possession offenses that their decision to plead or go to trial will be rendered with full awareness of the immigration consequences of such a conviction. Non-citizens will no longer be able to avoid the most drastic consequence of all — removal—-by pleading guilty. This will further undermine state rehabilitative schemes because it will remove a tremendous incentive for first-time drug offenders to plead guilty. As amicus point out, this change in the cost-benefit analysis directly eviscerates the effectiveness of states’ rehabilitative statutes that, like the FFOA, aim to remove the legal consequences of a minor, first-time drug offense for those offenders who successfully complete their probationary requirements and undergo drug treatment.
Finally, the notion that state expungement programs should be given different or less significant treatment than their federal counterparts is directly at odds with the principle of “comity” and respect *716 for state court proceedings and processes that federal courts have embraced in other areas. See, e.g., Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 784-86, 178 L.Ed.2d 624 (2011) (state court proceedings are the “central process” through which federal habeas claims should be adjudicated, and federal court may not impose requirements that “undercut state practices designed to preserve the integrity of the case-law tradition”). It is lamentable that, while federal courts apply extreme deference to state laws and procedures in contexts where they might serve to frustrate the vindication of constitutional or federally-protected rights, we refuse to recognize state programs in the context where they might serve to trigger the FFOA in a manner completely consistent with congressional intent. See Beard v. Kindler, — U.S. —, 130 S.Ct. 612, 618-19, 175 L.Ed.2d 417 (2009) (“In light of ... federalism and comity concerns ... it would seem particularly strange to disregard state ... rules that are substantially similar to those to which we give full force in our own courts.”). Though some of our sister circuits may ascribe to Congress little faith in state court rehabilitative schemes, we should not feel so bound. Cf. Acosta, 341 F.3d at 227.
D.
There is one thing on which we all can agree: “Reliance on the clear, binding precedent of Lujan-Armendariz strikes us as entirely reasonable and prudent, particularly in light of Congress’s inaction, the Supreme Court’s steady denial of certiorari in cases raising this issue, and our own consistent application (and, arguably, expansion) of the precedent in a series of cases spanning more than a decade.” Maj. Op. at 693 n.6. To this list of reasons we can add one more: the holding in Lujan-Armendariz itself is entirely reasonable and prudent. Moreover, there is no compelling reason why we should overrule Lujan-Armendariz without first engaging in a thorough statutory analysis. Such an analysis reveals that Congress never intended to exclude state-expunged first-time drug possession dispositions from the definition of “conviction” in § 1101(a)(48)(A) of the INA.
For all of the foregoing reasons, I would grant Nunez-Reyes’s petition for review and hold that his two misdemeanor convictions are eligible for FFOA treatment. While the rational basis test sets a low bar, there is simply no indication that Congress intended to deny FFOA treatment to aliens with state-expunged first-time minor drug offenses who have successfully undergone a state-approved program that resulted in their rehabilitation. In fact, the majority’s opinion serves to undermine Congress’s evidenced intent. Unless and until we are willing to engage in a thorough analysis of the definition of “conviction” under the INA, we should adhere to the principle of stare decisis and demonstrate restraint. This is particularly true where, as here, reexamining and casting aside our precedent is unnecessary to deciding the case before us. Because the majority ultimately reaches further than it needs to, without digging deeper than it ought to, I dissent.

. Because I believe that the rule articulated in Lujan-Armendariz should be upheld, I do not reach the question whether the majority’s new rule should apply only prospectively.

. California Penal Code § 1210.1 (2006) codifies the Substance Abuse and Crime Prevention Act, also known as "Proposition 36.”

. This misdemeanor count of using or being under the influence of a stimulant was the same violation for which Nunez-Reyes was convicted under California Health & Safety Code § 11550(a).

. A person convicted of using or being under the influence of a controlled substance in violation of California Health & Safety Code § 11550(a) "is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days or more than one year in a county jail.”