[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13845

_____

Agency No. A075-853-600


WALING CHOIZILME,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 30, 2018)

Before JORDAN, HULL and GILMAN,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Waling Choizilme, a native and citizen of Haiti, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order of removal based on his five criminal convictions for drug offenses under Florida Statute § 893.13. After review and with the benefit of oral argument, we conclude that the BIA did not err in concluding that Choizilme was ineligible for cancellation of removal because his Florida conviction for sale of cocaine, in violation of Fla. Stat. § 893.13(1)(a)(1), constituted "illicit trafficking" within the meaning of 8 U.S.C. § 1101(a)(43)(B). Accordingly, we deny the petition.

## I.  LEGAL BACKGROUND

The Immigration and Nationality Act of 1965 ("INA") makes removable "[a]ny alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA further provides that an alien who has been convicted of an aggravated felony is ineligible for discretionary relief in the form of cancellation of removal. Id. § 1229b(a). All parties agree that Choizilme is removable and not eligible for cancellation of removal if he was convicted of an "aggravated felony." The dispute in this case involves the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)(B), and whether Choizilme's sale-of-cocaine conviction under Fla. Stat. § 893.13(1)(a)(1) falls within that definition.

2

One of the many crimes that constitutes an "aggravated felony" under the INA is "illicit trafficking in a controlled substance (as defined in section 802 of Title 21),[1] including a drug-trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B).

Recently, this Court has addressed the two portions of this definition: (1) "illicit trafficking in a controlled substance"; and (2) a "drug trafficking crime" as defined in 18 U.S.C. § 924(c). First, this Court held that a conviction for possession of marijuana with intent to sell under Fla. Stat. § 893.13(1)(a)(2) is not categorically a "drug trafficking crime" as defined in 18 U.S.C. § 924(c), and therefore cannot qualify as an aggravated felony under that second portion of 8 U.S.C. § 1101(a)(43)(B). Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1283 (11th Cir. 2013). The Donawa Court left open the possibility that a violation of the same Florida statute might nevertheless qualify as an aggravated felony under the "illicit trafficking in a controlled substance" portion of § 1101(a)(43)(B). Id. at 1283.

Subsequently, in Spaho v. U.S. Att'y Gen., 837 F.3d 1172, 1176-79 (11th Cir. 2016), this Court held that a conviction for sale of a controlled substance under Fla. Stat. § 893.13(1)(a)(1) qualified as "illicit trafficking in a controlled substance" and, therefore, constituted an aggravated felony under that first portion

---

[1]Under 21 U.S.C. § 802, the term "controlled substance" is defined in relevant part as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V" of the federal drug schedules. 21 U.S.C. § 802(6).

of § 1101(a)(43)(B).  See also Gordon v. U.S. Att'y Gen., 861 F.3d 1314, 1318-19

(11th Cir. 2017) (following Spaho).  That is the same statute under which

Choizilme was convicted.

With this background, we review the procedural history of Choizilme's

immigration proceedings and then address Choizilme's arguments on appeal.

## II.  IMMIGRATION PROCEEDINGS 2012-2017

In December 1998, Choizilme was admitted to the United States as a legal

permanent resident.[2]  In 2005, Choizilme was convicted in Florida state court of,

inter alia, (1) possession of cocaine, (2) possession of a Schedule IV substance,

(3) possession of a Schedule II substance, and (4) possession of hydrocodone, all in

violation of Fla. Stat. § 893.13(6)(a).  In 2006, Choizilme was convicted in Florida

state court of selling cocaine, in violation of Fla. Stat. § 893.13(1)(a)(1).

## A.    Initial Hearings in August and December 2012

In March 2012, the Department of Homeland Security ("DHS") issued a

Notice to Appear, charging Choizilme with removability under 8 U.S.C.

§ 1227(a)(2)(B)(i) for having the above-listed five Florida convictions for

controlled-substance offenses.  In support of the Notice to Appear, DHS submitted

records of Choizilme's convictions.  At Choizilme's first master-calendar hearing

---

[2]Choizilme originally was admitted to the United States in April 1991, when he was five years old.  His status was adjusted to that of a legal permanent resident in December 1998, when his parents obtained legal permanent-resident status.

on August 14, 2012, Choizilme appeared pro se. The IJ informed Choizilme that he had a right to be represented by counsel, and granted Choizilme a continuance until December 4, 2012 to obtain counsel.

At his second master-calendar hearing on December 4, 2012, Choizilme, through counsel, requested a continuance because he was seeking to vacate his Florida convictions in state court. The government did not object, and the IJ granted a six-month continuance until June 4, 2013.

## B.    June 4, 2013 Hearing

At the June 4, 2013 hearing, Choizilme, again through counsel, sought another continuance of his immigration proceedings "to figure out whether or not he [was] eligible for cancellation [of removal]." Choizilme explained that he had retained a criminal attorney who was "working on a motion to vacate" his 2006 sale-of-cocaine conviction because that drug conviction would prevent him from being eligible for cancellation of removal. Choizilme admitted he had not filed a motion to vacate in state court yet because he was unable to afford a criminal attorney sooner.

The government opposed Choizilme's motion for a continuance. The IJ agreed that a continuance was not warranted at that point because it was "still kind of tenuous on [his] post-conviction relief." Accordingly, the IJ suggested that Choizilme plead to the allegations in the Notice to Appear to "advance the case a

5

little bit." Choizilme, through counsel, admitted the allegations and conceded the charge of removability. The IJ sustained the charge and designated Haiti as Choizilme's country of removal. The IJ further indicated that Choizilme was eligible for deferral of removal under the United Nations Convention Against Torture ("CAT"), and gave him 60 days to file an application for deferral.[3]

The IJ scheduled a merits hearing for April 25, 2014. This, in effect, gave Choizilme 10 more months to file a motion to vacate his Florida convictions in state court (i.e., a 10-month continuance). The IJ stated that, "by that time if he's eligible for cancellation, you can file that application and we'll convert that into a . . . cancellation hearing."

## C.    Merits Hearing on April 25, 2014

Ten months later, at the April 25, 2014 merits hearing, Choizilme, through counsel, indicated that he still had not filed a petition in state court to vacate his 2006 sale of cocaine conviction and that "without the vacatur he ha[d] no relief available." Choizilme, again through counsel, stated that "if the [IJ was] unable to grant [a] continuance," the IJ should proceed by issuing a final order of removal.

To the extent that Choizilme was requesting another continuance to "wait[] to see if his conviction is vacated," the government objected. The IJ agreed that

---

[3]The CAT allows for deferral of removal of aliens who (1) have been ordered removed and (2) have been found to be entitled to CAT protection, but (3) are not eligible for withholding of removal under the CAT. See 8 C.F.R. § 1208.17(a).

6

another continuance was not appropriate.  As of this April 25, 2014 hearing, Choizilme already had had two continuances to seek relief in state court, totaling 16 months (December 4, 2012 to April 25, 2014).  The IJ stated, however, that in the event that Choizilme was successful in seeking post-conviction relief in state court, he could file a motion to reopen his immigration proceedings to determine his eligibility for relief.[4]

The IJ then issued an oral decision ordering Choizilme's removal to Haiti. The IJ noted that Choizilme had admitted the allegations in the Notice to Appear at the prior June 4, 2013 hearing and was found subject to removal as charged.  The IJ observed that Choizilme previously was granted a continuance (16 months) for the purpose of seeking post-conviction relief, but had yet to file for such relief in state court.  The IJ reiterated his determination that there was "not sufficient good cause" to grant Choizilme a further continuance to await the outcome of a post-conviction motion.  Indeed, a post-conviction motion still had not yet been filed.

### D.    Appeal to the BIA

On May 27, 2014, Choizilme, through counsel, appealed the IJ's order of removal to the BIA.  In his notice of appeal, Choizilme argued that the IJ erred in ordering his removal without advising him of his potential eligibility for cancellation of removal.  Choizilme contended that he was eligible for cancellation

---

[4]At the April 25, 2014 hearing, Choizilme, through counsel, advised that he did not intend to file an application for withholding of removal under the INA or for CAT relief.

of removal because, <u>inter alia</u>, his 2006 Florida conviction for sale of cocaine was not an aggravated felony under the INA because it did not qualify as either a "drug trafficking crime" or "illicit trafficking."  In support of his argument, Choizilme cited this Court's decision in <u>Donawa</u>, which held that a conviction under Fla. Stat. § 893.13(1)(a)(2) was not a "drug trafficking crime" but left open the "illicit trafficking" issue.  <u>See</u> <u>Donawa</u>, 735 F.3d at 1283 (declining to affirm on the ground that Donawa's marijuana conviction was an illicit trafficking aggravated felony because the BIA never considered that argument).

In his October 24, 2014 brief before the BIA, Choizilme argued, as an initial matter, that the BIA should remand his case to the IJ because the IJ's oral decision failed to provide a meaningful explanation as to why Choizilme was ineligible for cancellation of removal.

Choizilme then asserted that he in fact was eligible for cancellation of removal because he was not convicted of an aggravated felony.  First, Choizilme explained that, in <u>Donawa</u>, this Court had held that convictions under Fla. Stat. 893.13(1)(a)(2) do not qualify as "drug trafficking crimes" under the INA because the Florida statute, unlike its federal analogue under § 924(c), does not require that the defendant know the illicit nature of the substance in his possession.

Choizilme acknowledged that the BIA's decision in <u>Matter of L-G-H-</u>, 26 I&N Dec. 365 (BIA 2014), held that a violation of Fla. Stat. § 893.13(1)(a)(1)

qualified as an aggravated felony under the broader "illicit trafficking" clause of the INA. But Choizilme contended the BIA had wrongly decided Matter of L-G-H-.

### E.    BIA's July 28, 2015 Decision

On July 28, 2015, the BIA denied Choizilme's request for a remand and dismissed his appeal. First, the BIA rejected Choizilme's contention that the IJ failed to advise him of his eligibility for cancellation of removal or to provide an explanation for determining that he was ineligible for relief. The BIA noted that Choizilme's own counsel acknowledged his apparent ineligibility for cancellation of removal, and this Court's decision in Donawa did not impose a duty on the IJ to advise Choizilme that he could seek cancellation on the basis of that decision. The BIA further noted that nothing prevented Choizilme's counsel from arguing at the April 2014 merits hearing that Choizilme was eligible for cancellation of removal in light of the 2013 Donawa decision.

As to Choizilme's arguments about Matter of L-G-H-, the BIA stated that it was bound to apply that precedential decision and, in any event, that Choizilme's arguments on appeal were essentially the same as those considered and rejected in Matter of L-G-H- itself. Finally, the BIA agreed with the IJ's conclusion that good cause did not warrant a third continuance. Choizilme timely filed a petition for review in this Court.

9

### III.  STANDARD OF REVIEW

This Court reviews de novo questions of law, including whether a conviction qualifies as an "aggravated felony" under the INA,  subject to the principles of deference articulated in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984); Arevalo v. U.S. Att'y Gen., 872 F.3d 1184, 1187 (11th Cir. 2017); Spaho v. U.S. Att'y Gen., 837 F.3d 1172, 1176 (11th Cir. 2016). Where the BIA has interpreted an ambiguous provision of the INA in a published, precedential decision, we defer to the BIA's interpretation under Chevron, as long as it reflects a permissible construction of the statute.  See Negusie v. Holder, 555 U.S. 511, 516-17, 129 S. Ct. 1159, 1163-64 (2009).

Chevron prescribes a two-step analysis.  First, we ask whether the statute at issue is ambiguous, which requires the Court to consider "whether Congress has directly spoken to the precise question at issue."  Vidiksis v. EPA, 612 F.3d 1150, 1154 (11th Cir. 2010) (quoting Chevron, 467 U.S. at 842-45, 104 S. Ct. at 2781-83) (internal quotation marks omitted).  If the statute is unambiguous, the Court applies it according to its terms and no deference is due to the BIA.  Carcieri v. Salazar, 555 U.S. 379, 387, 129 S. Ct. 1058, 1063-64 (2009); see also Esquivel-Quintana v. Sessions, __ U.S. __, 137 S. Ct. 1562, 1572 (2017) (declining to apply Chevron deference to the BIA's interpretation of one of the aggravated-felony

definitions in the INA because "the statute, read in context, unambiguously foreclose[d] the [BIA's] interpretation").

Second, if the statute is silent or ambiguous with respect to the specific issue presented, we must then determine whether the BIA's interpretation is reasonable or based on a permissible construction of the statute. See Chevron, 467 U.S. at 843, 104 S. Ct. at 2781-82. A reasonable interpretation is one that is "rational and consistent with the statute." See Sullivan v. Everhart, 494 U.S. 83, 89, 110 S. Ct. 960, 964 (1990).

"[T]o determine whether an alien's conviction qualifies as an aggravated felony [under the INA], we employ a categorical approach by looking to the statute . . . of conviction rather than the specific facts underlying the crime." Esquivel-Quintana, 137 S. Ct. at 1567-68 (internal quotation marks omitted). "Under that approach, we ask whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." Id. (internal quotation marks omitted). To make that determination, we "line[] up [the state] crime's elements alongside those of the generic offense and see[] if they match." Mathis v. United States, 579 U.S. __, __, 136 S. Ct. 2243, 2248 (2016). In this regard, the court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime," and a conviction under the state statute will

11

constitute a conviction for the generic offense only "if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps v. United States, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281 (2013).

When the state statute of conviction sets out multiple elements in the alternative, and thereby defines multiple crimes, we employ a modification of the categorical approach, in which we may look to certain judicial records to determine which of the alternative crimes formed the basis for the defendant's conviction. Mathis, 579 U.S. at__, 136 S. Ct. at 2249. If we can tell which statutory phrase the defendant was necessarily convicted under, we "then compare that crime, as the categorical approach commands, with the relevant generic offense." Id.

### IV.  MATTER OF L-G-H-

Because the BIA in Choizilme's case relied on its precedent in Matter of L-G-H-, we outline what that decision held and why.

Like Choizilme, the respondent in Matter of L-G-H- was convicted in 2006 of, among other things, selling cocaine in violation of Fla. Stat. § 893.13(1)(a)(1). Matter of L-G-H-, 26 I&N Dec. at 366. Subsequently, DHS charged him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having a prior aggravated-felony conviction for illicit trafficking in a controlled substance. Id. An IJ found the respondent removable, determining in relevant part "that the respondent was convicted of an aggravated felony based on his conviction for selling cocaine." Id.

12

The respondent appealed to the BIA, which likewise concluded "that the respondent's conviction for selling cocaine in violation of [Fla. Stat. § 893.13(1)(a)(1)] is for an aggravated felony under the illicit trafficking clause of [8 U.S.C. § 1101(a)(43)(B)]." Id. at 368.

As a preliminary matter, the BIA explained that, prior to the enactment of Fla. Stat. § 893.101, the Florida Supreme Court had held that the mens rea element of the precursor crime for possession of a controlled substance contained two components: (1) knowledge of the presence of the substance; and (2) knowledge of its illicit nature. Id. at 367 (citing Scott v. State, 808 So. 2d 166, 169-70 (Fla. 2002), and Chicone v. State, 684 So. 2d 736, 738, 745-46 (Fla. 1996)). In 2002, the Florida legislature determined that those cases were "contrary to legislative intent and expressly eliminated knowledge of the substance's illicit nature as an element of controlled-substance offenses." Id. (citing Fla. Stat. § 893.101(2002)). Section 893.101 did not, however, eliminate knowledge of the presence of the substance as an element of Florida controlled substance offenses, and created an affirmative defense of lack of knowledge as to the substance's illicit nature. Id. (citing State v. Adkins, 96 So. 3d 412, 415-16 (Fla. 2012)); see also Fla. Stat. 893.101(2) (establishing affirmative defense of lack of knowledge of illicit nature).

The BIA then explained that, in Donawa, this Court concluded that § 893.101 "had the effect of preventing drug trafficking offenses in Florida from

13

qualifying as aggravated felonies under the 'drug trafficking crime' clause of [§ 1101(a)(43)(B)]." Id. Describing the Donawa Court's reasoning, the BIA explained that "because Florida law eliminated knowledge of the illicit nature of the controlled substance as a required element of the offense of drug trafficking under section 893.13(1)(a)," the Florida statute was now broader than its federal counterpart under § 924(c), which requires such knowledge for conviction. Id. (citing Donawa, 735 F.3d at 1281-82). Consequently, the Donawa Court concluded that convictions under Fla. Stat. § 893.13(1)(a) cannot qualify as aggravated felonies under the "drug trafficking crime" clause of § 1101(a)(43)(B). Id. at 367-68. The BIA noted, however, that the Donawa Court "expressly declined to consider the possibility that such an offense could be an aggravated felony under the 'illicit trafficking' clause of [§ 1101(a)(43)(B)]." Id. The BIA then addressed that question in the first instance. See id.

The BIA first noted that the phrase "illicit trafficking" is not defined in the INA. Id. at 368. However, the BIA previously had "determined that Congress used the term to include 'any state, federal, or qualified foreign felony conviction involving the unlawful trading or dealing' in a controlled substance as defined by Federal law." Id. (quoting Matter of Davis, 20 I&N Dec. 536, 540-41 (BIA 1992), modified on other grounds by Matter of Yanez, 23 I&N Dec. 390 (BIA 2002)). In other words, to constitute illicit trafficking, a state offense must be (1) a felony

14

(2) that involves unlawful trading or dealing (3) in a controlled substance. See id. Because the record established that the respondent's Florida cocaine conviction met the first and third of these criteria, the BIA determined that "[t]he remaining issue is whether the respondent's conviction under [§ 893.13(1)(a)(1)] necessarily involved the 'unlawful trading or dealing' in cocaine." Id. at 368-69. To make that assessment, the BIA had to decide whether the "illicit trafficking" clause of § 1101(a)(43)(B) included a specific mens rea requirement. Id. at 369.

Looking to the language of § 1101(a)(43)(B), the BIA noted that "[t]here is no express mens rea requirement included in the term 'illicit trafficking.'" Id. The BIA reasoned, however, that because the phrase "including a drug trafficking crime" in § 1101(a)(43)(B) "is set forth as a subset of 'illicit trafficking,' Congress must have intended that 'illicit trafficking' would encompass other controlled substance offenses beyond those defined to be a 'drug trafficking crime.'" Id. Accordingly, the BIA concluded that "illicit trafficking" need not be limited to crimes that include knowledge of the illicit nature of the substance as a mens rea requirement. Id.

The BIA further pointed out that when Congress revised the INA in 1990, "it intended to expand, rather than limit, the removal of aliens convicted of drug offenses." Id. Moreover, there was no reason to believe that Congress intended to impose a specific mens rea requirement, and thereby exclude state drug-trafficking

15

crimes from the aggravated-felony definition solely because they did not require knowledge of the illicit nature of the substance involved. Id. The BIA also noted that "[t]he Supreme Court has long recognized the constitutional validity of statutes related to public-welfare offenses, such as the illegal dealing of narcotics, even though they lack a mens rea requirement." Id. Although not aware of any legislative history addressing the mens rea issue, the BIA determined that Congress likely was aware of that Supreme Court precedent when it expanded the aggravated-felony definition to include illicit trafficking. Id. at 370.

Finally, the BIA noted its prior holding in Matter of Davis that "'illicit' is defined as 'not permitted or allowed; prohibited; unlawful; as an illicit trade.'" Id. (quoting Matter of Davis, 20 I&N Dec. at 541). In thus defining "illicit," Matter of Davis "gave effect to this plain meaning to construe the term 'illicit' as simply referencing the illegality of the trafficking activity." Id. The BIA explained that this plain meaning did not necessarily suggest an illicit-nature mens rea requirement "because a person can engage in the unlawful or illicit trading or dealing in a controlled substance without knowing that the controlled substance that is the subject of the transaction is illegal." Id. Consequently, the BIA "expressly [held] that there is no such mens rea required by the term 'illicit,' at least not within the context of the statutory scheme established by Florida, where

16

knowledge of the substance is still required and an affirmative defense is available to show lack of knowledge of the illegal nature of the substance." Id.

Having concluded that "illicit trafficking" does not include a mens rea requirement, the BIA then considered whether § 893.13(1)(a)(1) "is otherwise a categorical match to the illicit trafficking clause" of the INA. Id. at 371. The BIA reiterated that to qualify as illicit trafficking, "the offense must involve a commercial transaction." Id. at 371-72. Examining the text of § 893.13(1)(a), the BIA found that the Florida statute "is divisible as to the offenses it prohibits," explaining that Florida's standard jury instructions make clear that § 893.13(1)(a) sets out multiple discrete offenses. Id. at 372. Because it concluded that § 893.13(1)(a) is divisible, the BIA applied the modified categorical approach and looked to the records of the respondent's conviction to determine if his offense categorically qualified as "illicit trafficking." Id. at 372-73. Those records showed that the respondent was convicted of selling cocaine. Id. at 373. And because the Florida courts have consistently held that "consideration is part of every sale" under § 893.13(1)(a), the BIA concluded that selling cocaine under § 893.13(1)(a) "is categorically an offense involving a commercial transaction and therefore meets the illicit trafficking definition" in the INA. Id. (internal quotation marks omitted).

17

## V.  OUR PRECEDENT IN SPAHO

Subsequent to Donawa and Matter of L-G-H-, this Court in Spaho squarely addressed whether a conviction for the sale of a controlled substance in violation of Fla. Stat. § 893.13(1)(a)(1) is an aggravated felony under the illicit-trafficking portion of 8 U.S.C. § 1101(a)(43)(B).  Spaho, 837 F.3d at 1175-76.  The petitioner in Spaho argued that the BIA erroneously determined that § 893.13(1)(a)(1) is divisible and, therefore, erroneously applied the modified categorical approach in determining that his conviction under § 893.13(1)(a)(1) constituted an illicit-trafficking aggravated felony.  Id. at 1176.

The Spaho Court concluded that "[i]n this case, the Board was correct in upholding the IJ's determination that § 893.13(1)(a)(1) is divisible."  Id. at 1177.  The Spaho Court explained that, in determining divisibility, we focus primarily on the statutory text.  Id.  "Section 893.13(1)(a) provides in relevant part that 'a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance.'"  Id. (quoting Fla. Stat. § 893.13(1)(a)).  Examining this plain language, the Spaho Court concluded that the text of § 893.13(1)(a) "delineates six discrete alternative elements: sale, delivery, manufacture, possession with intent to sell, possession with intent to deliver, and possession with intent to manufacture."  Spaho, 837 F.3d at 1177.

18

Thus, consistent with the BIA's analysis in that case, the Spaho Court determined that § 893.13(1)(a) is divisible.  Id.

In reaching this conclusion, the Spaho Court rejected the petitioner's argument that the BIA's divisibility determination was in conflict with Donawa. Id. at 1178.  The Spaho Court acknowledged that Donawa "applied the categorical approach for indivisible statutes in finding that a conviction under § 893.13(1)(a)(2) did not qualify as an aggravated felony under the drug trafficking component of 8 U.S.C. § 1101(a)(43)(B)."  Id.  But the Spaho Court distinguished Donawa because it "dealt with a different and narrower question than that presented here"—namely, whether the affirmative defense of lack of knowledge of the illicit nature of the substance established by Fla. Stat. § 893.101 effectively created two separate offenses under § 893.13(1)(a), one with a mens rea requirement and one without.  See id.

The Spaho Court explained that although Donawa concluded that § 893.101's affirmative defense was insufficient to render § 893.13(1)(a)(2) divisible as to its mens rea component, Donawa "did not analyze the actus reus element of § 893.13(1)(a) to ascertain whether the separate acts forbidden by the statute rendered it divisible by establishing multiple, alternative offenses of which a defendant could be convicted."  Id. (emphasis added).  The Spaho Court further noted that Donawa had no reason to perform that analysis because the

19

§ 893.13(1)(a)'s lower mens rea requirement meant that it categorically was not a "drug trafficking crime" under § 1101(a)(43)(B). Id. By contrast, the Spaho Court could not "stop where the Donawa Court did" because illicit trafficking "does not have the same heightened mens rea requirement as drug trafficking crimes." Id. (citing Matter of L-G-H-, 26 I&N Dec. at 370). Thus, performing the appropriate textual analysis of § 893.13(1)(a), the Spaho Court "agree[d] with the Board that the statute is divisible with respect to the 'act' element and that the modified categorical approach applies." Id.

Applying that approach, the Spaho Court explained that some of the alternative elements set forth in § 893.13(1)(a) involve illicit trafficking and some do not. Id. Mirroring the BIA's analysis in Matter of L-G-H-, the Spaho Court defined "illicit trafficking" as "any state, federal, or qualified foreign felony conviction involving the unlawful trading or dealing of any controlled substance." Id. (quoting Matter of Davis, 20 I&N Dec. at 541). The Spaho Court further explained that "unlawful trading or dealing" requires "commercial conduct," and "[t]wo of the alternative elements of § 893.13(1)(a), sale and possession with intent to sell, are inherently commercial and qualify under the definition of an illicit trafficking aggravated felony." Id. at 1178-79 & n.3 (citing Matter of L-G-H- for the proposition that "sale" under Florida law "categorically requires consideration"). Because "Spaho was adjudged guilty of selling a controlled

20

substance" under § 893.13(1)(a)(1), the Spaho Court concluded that his conviction "easily [fell] within the generic 'illicit trafficking' offense." Id. at 1179.

Before leaving Spaho, we point out that, in citing Matter of L-G-H-, the Spaho Court noted that the BIA concluded in that case that "illicit trafficking" does not require knowledge of the illicit nature of the substance as a mens rea element, at least in the context of the Florida statute. Spaho, 837 F.3d at 1178 n.2. The Spaho Court further noted that "Spaho does not challenge the correctness of the BIA's definition of illicit trafficking, and we express no opinion on it." Id.

## VI. GORDON

Subsequently, this Court has followed Spaho in applying the modified categorical approach to determine whether an offense under § 893.13(1)(a) qualifies as an illicit-trafficking aggravated felony. See Gordon, 861 F.3d at 1318-19. In Gordon, the petitioner had two prior convictions for selling or delivering cannabis, in violation of § 893.13(1)(a). Id. at 1317. Like the petitioner in Spaho, the petitioner in Gordon argued that the BIA erred in applying the modified categorical approach to determine that his convictions were aggravated felonies. Id. at 1318.

Following the same divisibility analysis outlined in Spaho, the Gordon Court explained that the text of § 893.13(1)(a) clearly delineates six discrete alternative elements, meaning that "as we held in Spaho, the statute is divisible." Id. at 1319.

21

Applying the modified categorical approach, the Gordon Court then addressed whether the petitioner's convictions qualified as "illicit trafficking." Id. Like the Spaho Court, the Gordon Court recognized that some elements of § 893.13(1)(a) involve illicit trafficking and some do not because "illicit trafficking" involves the "unlawful trading or dealing of [a] controlled substance," which requires "commercial conduct." Id. (internal quotations omitted). The Gordon Court then noted, as had Spaho, that sale and possession with intent to sell under § 893.13(1)(a) inherently involve commercial conduct, while the other four alternative elements might not. Id.

In Gordon the petitioner's convictions were for sale or delivery of a controlled substance in violation of § 893.13(1)(a). Id. The Gordon Court explained that, under Florida law, "sale and delivery of controlled substances are separate offenses with separate definitions." Id. (internal quotations omitted). And "[d]elivery, unlike sale, does not include an element of consideration." Id. Thus, the Gordon Court concluded that a conviction for delivery of a controlled substance under § 893.13(1)(a) does not qualify as an aggravated felony. Id.

The Gordon Court then explained that the documents relied on by the BIA to determine which of § 893.13(1)(a)'s elements formed the basis of the petitioner's convictions "d[id] not disclose whether Mr. Gordon was convicted for violating the element of sale or for violating the element of delivery." Id. And because the BIA

22

had to presume that Gordon's conviction rested on the least of the acts criminalized, "it had to presume that the conviction was for delivery, and accordingly not an aggravated felony." Id. With this background, we turn to Choizilme's claims on appeal.

## VII.  ANALYSIS OF CHOIZILME'S CLAIM

At issue in this appeal is Choizilme's 2006 conviction under Fla. Stat. § 893.13(1)(a)(1).  Here, both parties agree that, of the six discrete alternative elements outlined in § 893.13(1)(a)(1), the "sale" element formed the basis of Choizilme's 2006 conviction, and the state court records submitted by the government during Choizilme's immigration proceedings confirm this to be the case.  See Mathis, 136 S. Ct. at 2249; see also Gordon, 861 F.3d at 1319; Spaho, 837 F.3d at 1178.  Accordingly, we must determine whether a conviction for sale of cocaine under Fla. Stat. § 893.13(1)(a)(1) categorically qualifies as illicit trafficking in a controlled substance under § 1101(a)(43)(B).  See Mathis, 136 S. Ct. at 2249.

On appeal, Choizilme argues that his sale-of-cocaine conviction cannot qualify as "illicit trafficking" because the Florida statute does not include knowledge of the illicit nature of the controlled substance as an element of the offense.  Choizilme contends that, unlike the Florida statute and contrary to the BIA's conclusion in Matter of L-G-H-, the generic federal definition of illicit

trafficking requires knowledge of the illicit nature of the substance as a mens rea element. As such, he maintains that convictions under Fla. Stat. § 893.13(1)(a), which lack that mens rea element, categorically do not qualify as aggravated felonies.

As described above, Spaho held, using the definition of illicit trafficking described in Matter of L-G-H-, that a conviction such as Choizilme's for sale of cocaine under § 893.13(1)(a)(1) constitutes illicit trafficking within the meaning of § 1101(a)(43)(B). See Spaho, 837 F.3d at 1179. The Spaho Court, however, expressly stated that it was not addressing the argument, which Choizilme now raises, regarding the BIA's interpretation of the term "illicit trafficking" in Matter of L-G-H- as not including an illicit nature mens rea element. See id. at 1178 n.2 ("Spaho does not challenge the correctness of the BIA's definition of illicit trafficking [with regard to the mens rea requirement], and we express no opinion on it."). Spaho left that question for another day. Here now, Choizilme raises the issue left open in Spaho. Consequently, we must address in the first instance whether Matter of L-G-H- correctly determined that "illicit trafficking" does not require knowledge of the illicit nature of the substance trafficked. For the following reasons, we conclude that the BIA's analysis of the mens rea

24

requirement for "illicit trafficking" under § 1101(a)(43)(B) in Matter of L-G-H- is correct.[5]

Like the BIA, "[o]ur analysis begins with the language of the statute." See Esquivel-Quintana, 137 S. Ct. at 1569 (internal quotations omitted). Section § 1101(a)(43)(B) provides that the term "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Although the "drug trafficking crime" portion of this definition includes an illicit-nature mens rea requirement, see Donawa, 735 F.3d at 1281, the BIA explained in Matter of L-G-H- that the use of the term "including" in § 1101(a)(43)(B) demonstrates that "drug trafficking crimes" are only a subset of "illicit trafficking" under the INA. See 8 U.S.C. § 1101(a)(43)(B); Matter of L-G-H-, 26 I&N Dec. at 369. Consequently, "Congress must have intended that 'illicit trafficking' would encompass other controlled substance offenses beyond those defined to be a 'drug trafficking crime.'" Matter of L-G-H-, 26 I&N Dec. at 369.

Furthermore, as the BIA pointed out in Matter of L-G-H-, the ordinary meaning of the word "illicit" simply denotes the illegality of a particular activity—in this case, trafficking in a controlled substance. Id. at 370; see also, e.g., Black's

---

[5]We need not decide whether to defer to the BIA's decision or review it de novo because, in any event, we agree with its analysis and conclusion.

25

Law Dictionary (10th ed. 2014) (defining "illicit" as "[i]llegal or improper");

Oxford English Dictionary (2d ed. 1989) (defining "illicit" as "[n]ot authorized or

allowed," "improper," and "unlawful"). Thus, the use of the term "illicit" does not

necessarily imply a mens rea requirement, as a person may engage in the unlawful

trafficking of a controlled substance without knowing the substance that is the

subject of the transaction is illegal. Matter of L-G-H-, 26 I&N Dec. at 370.

Finally, as the BIA noted in Matter of L-G-H-, Congress has generally

evinced an "inten[t] to expand, rather than limit, the removal of aliens convicted of

drug offenses." Id. at 369 (citing Matter of Esqueda, 20 I&N Dec. 850, 853-54 &

n.3 (BIA 1994) ("[I]t is well recognized that Congress has historically exhibited a

strong national policy to deport aliens convicted of drug offenses from our

country.")). It stands to reason, then, that Congress would not wish to exclude

from the definition of "illicit trafficking" state offenses that otherwise qualify as

"unlawful trading or dealing of [a] controlled substance" merely because they lack

an illicit nature mens rea requirement. See id. This is particularly true here, where

Florida law explicitly provides a safeguard against convictions for truly innocent

conduct. See Fla. Stat. § 893.101(2); Adkins, 96 So. 3d at 422. As the Florida

Supreme Court has explained:

> Any concern that entirely innocent conduct will be punished with a
> criminal sanction under chapter 893 is obviated by the statutory
> provision that allows a defendant to raise the affirmative defense of an
> absence of knowledge of the illicit nature of the controlled substance.

> In the unusual circumstance where an individual has actual or constructive possession of a controlled substance but has no knowledge that the substance is illicit, the defendant may present such a defense to the jury.

Adkins, 96 So. 3d at 422.

In sum, we agree with the BIA's analysis in Matter of L-G-H- and conclude that "illicit trafficking" under § 1101(a)(43)(B) does not require a specific mens rea of knowledge of the illicit nature of the controlled substance being trafficked. Accordingly, consistent with the BIA's decision in Matter of L-G-H- and this Court's decision in Spaho, we conclude that the BIA properly determined that Choizilme's 2006 conviction for sale of cocaine in violation of § 893.13(1)(a)(1) qualifies as an illicit-trafficking aggravated felony under the INA, making Choizilme ineligible for cancellation of removal. We therefore deny Choizilme's petition for review.

**PETITION FOR REVIEW DENIED.**

27

JORDAN, Circuit Judge, concurring in the judgment.

I concur in the judgment.

In *Spaho v. U.S. Atty. General*, 837 F.3d 1172, 1178 (11th Cir. 2012)—exercising plenary review independent of any BIA interpretation—we squarely held that a conviction under Fla. Stat. § 893.13(1)(a)(1) "constitutes an 'illicit trafficking' aggravated felony" pursuant to 8 U.S.C. § 1101(a)(43)(B). I dissented in *Spaho* and continue to believe it was wrongly decided, *see id.* at 1179–82 (Jordan, J., dissenting), but it seems to me that the case necessarily drives the result here because Mr. Choizilme was also convicted of violating § 893.13(1)(a)(1). The fact that the *Spaho* panel, *see id.* at 1178 n.2, did not address the BIA's interpretation of the term "illicit trafficking in a controlled substance[,] . . . including a drug trafficking crime," § 1101(a)(43)(B), does not render the decision any less binding. *See Tippit v. Reliance Standard Life*, 457 F.3d 1227, 1234 (11th Cir. 2006) (explaining that a prior panel decision "cannot be circumvented or ignored on the basis of arguments not made or considered by the prior panel"). The majority apparently thinks otherwise, however, and engages in its own interpretation of the term.

If we adhere to the portion of *Spaho* that agreed with the BIA's use of the modified categorical approach, *see* 837 F.3d at 1177, but still get to decide anew whether a conviction under § 893.13(1)(a)(1) constitutes "illicit trafficking in a

controlled substance," I conclude that the term is ambiguous.  I would deny Mr. Choizilme's petition, but only because the BIA's interpretation of that term in *Matter of L-G-H*, 26 I. & N. Dec. 365 (BIA 2014), is due deference under *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

\* \* \* \* \*

The Supreme Court has told us that, in interpreting an undefined term in the Immigration and Nationality Act, we should look at the language of the relevant statute, including the everyday understanding of the term in question, followed by the structure of the statute, the definition of the term in any related federal statutes, and the term's generic meaning as gleaned from state criminal codes.  *See Esquivel-Quintana v. Sessions*, 137 S. Ct 1562, 1569–71 (2017).  As I explain below, this multi-step analysis does not provide any clear answers here.

First, the term "illicit trafficking in a controlled substance[,] . . . including a drug trafficking crime" is a "riddle wrapped in a mystery inside an enigma." Churchill by Himself: The Definitive Collection of Quotations 145 (R. Langworth ed. 2008).  There appears to be no generally accepted definition of the term "illicit trafficking"—much less "illicit trafficking in a controlled substance"—so we must turn to what "illicit" and "trafficking" mean.  The everyday understanding of "illicit" is "unlawful; esp. not sanctioned by law, rule, or custom."  1 Shorter

Oxford English Dictionary 1317 (5th ed. 2002). *See also* Black's Law Dictionary 865 (10th ed. 2014) ("[i]llegal or improper"). "Trafficking" means "[t]he act of transporting, trading, or dealing, esp. [i]llegal goods or people." *Id.* at 1726. *See also* The American Heritage Dictionary of the English Language 1830 (4th ed. 2009) ("to carry on trade or other dealings"); *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006) ("[O]rdinarily 'trafficking' means some sort of commercial dealing.").

These individual definitions of "illicit" and "trafficking," however, do not really tell us what the two words mean when they are combined. If "trafficking" already connotes some level of illegality or unlawfulness, as Black's Law Dictionary suggests, it is difficult to see what "illicit" adds to the calculus. And even if "illicit" means something else as an adjective for "trafficking," it is not apparent what that something else is. Is it the level of *mens rea*? Or the quantity being trafficked? Or something else altogether? The text does not yield any ready answers.

Second, the structure of the INA does not help. The majority reasons that the use of "including a drug trafficking crime," following the term "illicit trafficking in a controlled substance," indicates that "drug trafficking" is a subset of "illicit trafficking." The word "including," according to the majority, generally connotes an illustrative example of the preceding general category. *See* Maj. Op. at 26. The flaw with this analysis is that, unlike most broad general categories that

30

are followed by narrower illustrative examples, here the example ("a drug trafficking crime") is in some ways broader than the general category ("illicit trafficking in a controlled substance"), and in those instances the example swallows the general category. The BIA recognized this very fact in *Matter of L-G-H*, 26 I. & N. Dec. at 369 n.6 ("the 'subset' is both broader and narrower than 'illicit trafficking'"). That is because of the way "drug trafficking crime" is defined in Title 21 of the U.S. Code. For example, felony convictions for recidivist simple possession under 21 U.S.C. § 844(a) are "drug trafficking crime[s]," but because those offenses do not have an element of commercial dealing they do not qualify as "illicit trafficking in a controlled substance." *See Lopez v. Gonzales*, 549 U.S. 47, 55 n.6 (2006) ("state possession crimes that correspond to felony violations . . . such as . . . recidivist possession, *see* 21 U.S.C. § 844(a), clearly fall within the definitions used by congress in . . . § 1101(a)(43)(B) and § 924(c)(2)"). So it is impossible to say with any certainty that "a drug trafficking crime" is just a narrower subset of "illicit trafficking in a controlled substance."

The majority's reading also potentially renders "drug trafficking crime" superfluous. If *mens rea* is the element that distinguishes "illicit trafficking in a controlled substance" from a "drug trafficking crime," *see Donawa v. U.S. Atty. General*, 735 F.3d 1275, 1281 (11th Cir. 2013) (holding that the generic definition

31

of "drug trafficking crime" requires proof that the defendant had knowledge of the nature of the substance in question), then convictions that do not qualify as "drug trafficking crime[s]" (because they lack the necessary *mens rea*) will always qualify as "illicit trafficking." And because both terms deal exclusively with controlled substances, the term "drug trafficking crime" may become superfluous. *See United States v. Campos-Serrano*, 404 U.S. 293, 301 n.14 (1971) ("A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal citation and quotation omitted). In sum, the structure of the INA does not resolve the question before us.

Third, the use of the same term in related federal statutes is equally unhelpful. To the extent that other federal statutes reference "illicit trafficking," the term is left undefined. *See, e.g.*, 6 U.S.C. § 348(a)(1) (defining "situational awareness" as knowledge and understanding of current unlawful cross-border activity, including threats and trends concerning "illicit trafficking" and unlawful crossings); 22 U.S.C. § 2291f(a)(2) (prohibiting the President from providing assistance to any individual or entity that "is or has been an illicit trafficker in any . . . controlled substance or is or has been a knowing assistor, abettor conspirator, or colluder with others in the illicit trafficking in any such substance").

The term "illicit trafficking" is used in other provisions of the INA, *see* § 1182(a)(2)(C), including a neighboring provision, *see* § 1101(a)(43)(C), but those provisions also leave the term undefined, and cases construing those provisions have deferred to the BIA's interpretation. *See Soto-Hernandez v. Holder*, 729 F.3d 1, 3–4 (1st Cir. 2013) (holding that the BIA's interpretation of "illicit trafficking in firearms," as used in § 1101(a)(43)(C), is entitled to *Chevron* deference); *Nguyen v. Holder*, 336 Fed. App'x 43, 46 (2d Cir. 2009) (concluding that "illicit trafficking," as used in § 1182(a)(2)(C), is ambiguous and deferring to the BIA's interpretation).

Finally, the term "illicit trafficking" is used in some state statutes. But, again, it is left undefined. *See, e.g.*, Alaska Stat. § 17.30.100; Colo. Rev. Stat. Ann. § 18-16-101; 720 Ill. Stat. Ann. Ch. 570/100; Ohio Rev. Code Ann. § 3719.70; 1 L.P.R.A. § 5161; Miss. Code Ann. § 41-29-159; Utah Code Ann. § 58-38a-203.

At the end of the day, the *Esquivel-Quintana* factors do not provide any clear guidance, and we are left with an ambiguous term. In my view, the BIA's interpretation of the ambiguous term "illicit trafficking in a controlled substance" as not requiring *mens rea*, *see Matter of L-G-H*, 26 I. & N. at 369–70, is entitled to *Chevron* deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999) ("the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication") (internal

33

quotation and citation omitted). Although I can't say with confidence that the BIA's interpretation is right, I also can't say with any certainty that it is wrong. Under the circumstances, *Chevron* deference is warranted.

\* \* \* \* \*

When a term in the INA is ambiguous, the BIA's interpretation by way of an agency opinion is afforded *Chevron* deference. I would deny Mr. Choizilme's petition on that basis.